Keating, J.
Plaintiffs Chess, Ralsan, Baymore and Nylacore* are owners of all the land on the perimeter of Pratt Oval, while plaintiffs Cateo and Rorech own all but one acre of the land in the interior. The tract, originally used as a service area by the Pratt family, consists of an oval-shaped dirt road enclosing four acres of undeveloped land and surrounded by five buildings of heavy mill construction, each of which face inward. The tract was unzoned until 1926, then zoned residential until 1942. However it had been used for industrial purposes since 1915 and these uses continued.
In 1942, when Charles Pratt sold the tract, it was zoned industrial (residential use being prohibited) and remained so until 1960 when the present amendment to the Building Zone Ordi- *209 nanee and Map of the City of Glen Cove was enacted. The industrial uses have continued throughout.
The 1960 amendment upzoned the properties from “ 1-1 Light Manufacturing” to “R-2 One-half Acre Single Family Residence ”. The plaintiffs challenged this ordinance as confiscatory in that none of the properties is adaptable to any of the uses permitted in the R-2 residential district. The uses permitted are single-family dwellings, municipal buildings, schools, colleges, etc., churches, scientific or research laboratories subject to the restriction that they “ may not offer any goods or services for sale ”, and florists’ greenhouses, country estates, and nurseries. However, the perimeter plaintiffs, who have continuously utilized their improved parcels for industrial purposes, clearly have valid nonconforming uses. The unimproved interior parcels have no nonconforming use.
The trial court found the ordinance confiscatory and unconstitutional as to the vacant interior parcels but upheld it as to the improved perimeter parcels. The Appellate Division affirmed the holding with regard to the perimeter parcels but reversed as to the interior lands, thus upholding the ordinance against both sets of plaintiffs. Beldock, P. J., and Rabih, J., dissented and would have affirmed the judgment at Special Term in toto.
A party who attacks a zoning ordinance as unconstitutional must show that the regulation is not justified under the police power by any reasonable interpretation of the facts. (Shepard v. Village of Skaneateles, 300 N. Y. 115.) The ordinance is presumed in the first instance to be constitutional. “If the validity of the legislative classification for zoning purposes be fairly debatable, the legislative judgment must be allowed to control.” (Village of Euclid v. Ambler Co., 272 U. S. 365, 388.)
However, while it is to be expected that zoning classifications will necessarily entail hardships for some individual owners, they may not deprive an owner of all beneficial use of his property. We must be careful lest the presumption of validity become virtually irrebuttable and the burden of proof upon a landowner so onerous as to foreclose, for all practical purposes, his avenue of redress. To sustain such an attack upon the validity of the ordinance, the aggrieved owner must show that on the facts known or reasonably assumed the enforcement of the ordinance *210 will preclude the use of his property for any purpose to which it is reasonably adapted. (Arverne Bay Constr. Co. v. Thatcher, 278 N. Y. 222, 226; Dowsey v. Village of Kensington, 257 N. Y. 221.) When an ordinance does go so far as to preclude the use of the property for any purpose for which it is reasonably adapted, it is confiscatory and must be held unconstitutional as to such property. (Summers v. City of Glen Cove, 17 N Y 2d 307, 309.)
With regard to the perimeter parcels, the trial court and both majority and minority of the Appellate Division held that the amended ordinance was constitutional. We agree.
While it is true that the existence of a nonconforming use will not preclude an owner from challenging an ordinance as confiscatory, it is also true that such a nonconforming use may be considered in determining the effect of the ordinance upon the property. (See Scarsdale Supply Co. v. Village of Scarsdale, 8 N Y 2d 325.) Thus, in comparing the value of the land before and after the amended ordinance to see if there is a confiscation, we must consider the continuing- value as a nonconforming use, discounting, of course, for restrictions and limitations placed on the nonconforming use. The fact is that six years after the passage of the amendment the perimeter businesses are apparently flourishing and the property seems to be in profitable use. The value of the parcels as nonconforming uses was not shown to be so disproportionate to their value as permitted uses as to amount to an economic taking of the property. Plaintiffs have shown hardship but not confiscation.
In their efforts to prove that the property has no possibility for permitted uses but rather is most readily adapted for precluded uses, plaintiffs introduced voluminous testimony as to the value of the industrial uses before the amendment compared with the value of the vacant land if all the buildings were demolished and the land sold for residential use. As the trial court found such testimony did not constitute proof of confiscation. It was based on the unrealistic assumption that valuable buildings would be demolished and vacant lands sold whereas the statute, far from requiring such demolition, creates nonconforming uses which may continue indefinitely. A present invasion cannot rest upon such a future speculative loss which is possible but unlikely to be self-imposed.
*211 Finally, the evidence supports the finding of the trial court that the perimeter plaintiffs failed to show that their buildings could not be reasonably and economically converted to scientific or laboratory use — a permitted use. Their expert testimony was largely concluso ry and was contradicted by defendant’s experts.
The case against the interior parcels is different. These 4% acres of vacant parcels are virtually surrounded by 15 acres of industrial buildings. More important, the surrounding nonconforming uses will apparently continue into the foreseeable future. It would offend common sense, the trial court found, to hold that an oasis of suburban living, governmental operation, academic learning or spiritual reflection could flourish amidst the desert of industrial activity which surrounds it.
Similarly, the permitted uses of a research laboratory or greenhouse, while perhaps technically feasible on one of the two parcels, are not economically feasible. The trial court found with regard to the one parcel that the surrounding nonconforming uses have eliminated profitability and the parcel is not worth a fraction of its assessed or appraised value. Mere functional feasibility is not the test where plaintiffs show that any permitted use is economically unfeasible so as to preclude, practically, such use. (Summers v. City of Glen Cove, supra.) The other interior parcel was neither functionally nor economically adaptable for any of the permitted uses.
We are thus faced, as in Arverne (supra), with land which cannot at present or in the immediate future be used profitably or reasonably without violating the ordinance. While temporary hardship might be necessary for the community good, no inference is permissible that the surrounding nonconforming uses will cease within a reasonable time so that the property could be put to permitted uses. The ordinance deprives the interior owners of the substantial use of their property for an unknown and uncertain number of years, and as to those owners the ordinance is confiscatory and void.
We are aware that the result we reach is anomalous and perhaps self-defeating. While upholding the right of Grlen Cove to upgrade its community, we may be frustrating that goal by allowing new factories to arise on the interior parcels. The improved perimeter factories are held properly zoned as resi *212 dential, whereas the vacant land in the middle is allowed to develop as industrial. Moreover, should one of the perimeter parcels be partially destroyed, or for some other reason cease to be entitled to a nonconforming use, the owner would find himself in almost the same position as the present interior owners to whom relief is being granted. Yet such perimeter owner is denied relief (though he may, on such an occurrence, be granted a variance).
These absurdities, however, go to the wisdom of the ordinance, not its constitutionality. We do not substitute our judgment for that of the local legislature. Applying constitutional principles, as we are bound to do, we see no state of facts reasonably to be presumed whereby the interior parcels can be used for permitted uses. On the other hand, we agree with both courts below that the perimeter plaintiffs have not shown a confiscation. Therefore, we are left with the anomalous result and the hope that the legislative body will review the zoning regulation in light of the ruling that the present amendment is unconstitutional as regards the interior.
With regard to the perimeter parcels, the order of the Appellate Division should be affirmed. With regard to the interior parcels, it should be reversed and the judgment of Special Term affirmed.
Chief Judge Desmond and Judges Fuld, Van Voobhis, Bubke and Scileppi concur with Judge Keating; Judge Bebgan dissents and votes to affirm.
On the appeal of Cateo and Rorech: Order reversed, with costs, and judgment of Special Term reinstated.
On the appeal of Chess, Ralsan, Baymore, Nylaeore, Cove and Universal: Order affirmed, with costs. <

 Plaintiffs Cove and Universal are tenants of Baymore and Ralsan and the holdings with respeet to the latter cover the rights of the former.