POMPA CONSTRUCTION CORPORA-
TION, Daniel Pompa and Nelson
Pompa, Plaintiffs-Appellants,

v.

CITY OF SARATOGA SPRINGS,
Defendant-Appellee.

No. 653, Docket 82–7708.

United States Court of Appeals,
Second Circuit.

Argued Jan. 10, 1983.

Decided May 2, 1983.

Lawrence M. McKenna, New York City (Wormser, Kiely, Alessandroni, Hyde & McCann, Charles G. Banino, and Francis M. Gregorek, New York City, of counsel), for appellants.

David H. Wilder, Asst. City Atty., City of Saratoga Springs, N.Y. (Richard F. Mullaney, City Atty., Saratoga Springs, N.Y., of counsel), for appellee.

Before FEINBERG, Chief Judge, and CARDAMONE and DAVIS,* Circuit Judges.

DAVIS, Circuit Judge:

Pompa Construction Corporation, Daniel Pompa and Nelson Pompa (Pompas or Appellants) appeal the denial by the United States District Court for the Northern District of New York (Miner, District Judge) of their request for a declaration (with injunctive relief) that a zoning ordinance of the City of Saratoga Springs, New York (City or Saratoga Springs), violates the Fourteenth Amendment to the United States Constitution as applied to their 68-acre tract of land within the City. Finding neither a legal error, a clear error of fact, or abuse of discretion, we affirm.

* Honorable Oscar H. Davis, of the United States Court of Appeals for the Federal Circuit, sitting by designation.

1. A *Comprehensive Development Plan, City of Saratoga Springs, New York,* was prepared by Murphy & Kren Planning Associates, Inc. pursuant to a contract with the State of New York.

2. On December 4, 1971, Daniel and Nelson Pompa acquired 41.15 acres of land, 12.52 acres of which lie within the City. The price of that land within the City is not shown in the record. On September 15, 1972 Pompa Construction Corporation acquired a 59.77-acre tract of land, 55.48 acres of which lie within the City, for $148,972.50.

I

On July 7, 1971, the City amended its zoning ordinance according to a Comprehensive Development Plan [1] (Master Plan), adopted by the City Council that same day, a plan which had been submitted in May, 1970 to the New York State Office of Planning Coordination. After those amendments, appellants acquired approximately 68 acres of unimproved land (the Pompa tract) in the northwest quadrant of Saratoga Springs on which they wished to operate a stone quarry.[2] Although the zoning ordinance in effect prior to the 1971 amendments permitted uses for the district in which the Pompa tract is located for "quarries, sand and gravel pits," those uses are no longer allowed under the 1971 ordinance. Rather, that district is now designated as a conservancy district, based upon the Master Plan's finding that:

> raw developable land is a basic natural resource that the City must judiciously safeguard. It offers flexibility for development and the City should retain this flexibility for as long as possible. . * * * The intent of this land use designation is to conserve land by discouraging premature development and avoid undisciplined and needless urban sprawl with its consequent municipal headaches.

Master Plan at 149–150.[3]

Permitted uses in conservancy districts fall into the following categories:

Permitted Principal Use

1. Site plan review for all uses

3. The Master Plan's recommendations were explicitly made in order to realize these purposes of the City's zoning ordinance:

a. The facilitation of the provision of adequate public service and facilities.
b. The preservation and protection of residential lands, both visually and physically from those of non-residential use, and whenever reasonable, the elimination of non-conforming uses, which have a deleterious effect on their surroundings.
c. The reduction and prevention of traffic hazards and congestion.
d. The general enhancement of city appearance.
e. The conservation of property values through the encouragement of the most appropriate use of land within the municipality.

2. Single family residence

3. Public schools, parks and playgrounds; places of worship

4. Golf course and club house

5. Riding academy

6. General farming

7. New York State conservation, highway and spa facilities

8. Farms; picnic groves; marina

9. Reforestation Areas

Accessory Use [4]

1. Private garages

2. Barns and stables

3. Greenhouses

Permissible upon site plan review and approval and upon issuance of a special permit

1. Cemeteries and crematories

2. Residential recreation facilities

3. Home Occupation in compliance

4. Roadside stand for sale of produce grown on the adjacent land

5. Private recreation facilities, hunting preserve

6. Horse race track, grandstand, parking facilities

7. Cultural facilities

8. Drive-in theatre

9. Golf driving range

Adjoining the 68-acre Pompa tract to the west, in the town of Milton, is an operating crushed stone quarry on land owned by appellants Daniel and Nelson Pompa. Adjoining the Pompa tract to the east, in Saratoga Springs, is another crushed stone quarry on land owned by Pallette Stone Corporation (wholly independent of appellants). The latter quarry, although located within the conservancy district, is conducted with the City's permission on the ground that it had been conducted as a permitted use prior to the 1971 amendments to the zoning ordinance.

Before the district court suit, appellants submitted an application for rezoning to the Saratoga Springs City Council to allow the operation of a stone quarry on the Pompa tract. Although both the City's and County's Planning Boards recommended approval of the application, the City Council denied appellants' petition on July 21, 1980. Following that denial, appellants brought this action in the court below to invalidate the City's zoning ordinance as applied to the Pompa tract, claiming that the ordinance violates the Fourteenth Amendment to the United States Constitution in preventing the use of that property as a stone quarry. After a trial, the district court made findings of fact, issued its opinion, and entered judgment for the defendant-appellee, dismissing the complaint on the ground that the amended ordinance did not infringe any of plaintiff-appellants' constitutional rights. The Pompas challenge as erroneous the district court's denial of their request for relief.

II

We of course agree, as do the parties, with Judge Miner's adoption of the legal standard stated by the Supreme Court in *Agins v. City of Tiburon,* 447 U.S. 255, 260, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106 (1980):

The application of a general zoning law to particular property effects a taking if the ordinance does not substantially advance legitimate state interests, see *Nectow v. Cambridge,* 277 U.S. 183, 188 [48 S.Ct. 447, 448, 72 L.Ed. 842] (1928), or denies an owner economically viable use of his land, see *Penn Central Transp. Co. v. New York City,* 438 U.S. 104, 138, n. 36, 98 S.Ct. 2646, 2666, n. 36, 57 L.Ed.2d 631 (1978).

*See also Schad v. Mount Ephraim,* 452 U.S. 61, 68, 101 S.Ct. 2176, 2182, 68 L.Ed.2d 671 (1981); *Village of Belle Terre v. Boraas,* 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1976); *Euclid v. Ambler Realty Co.,* 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926).

Applying that standard, the district court concluded that (1) the establishment of a conservancy district was reasonably related to the City's concerns as expressed in its Master Plan and (2) various beneficial and

---

4. An accessory use is permitted only in conjunction with a permitted principal use.

economically viable uses of the Pompa tract are available to appellants within the constraints of the ordinance. We consider these two determinations in turn.[5]

## III

Appellants first maintain that the statements of purpose in the zoning ordinance and Master Plan relating to the establishment of a conservancy district are too "generalized" to sustain the legitimacy of the amended ordinance as applied to the Pompa tract. Specifically, they complain that "[p]rohibition of the extraction of stone is not even suggested by the Master Plan to be related to this purpose (or to any other)." They seem to say that, in order for the prohibition of quarrying at the Pompa tract to be related legitimately to the City's stated aims of maintaining flexibility regarding future land use, the Plan or the zoning ordinance must have given explicit reasons for that particular prohibition.

■ We reject this contention. Although the zoning ordinance, as applied to the Pompa tract, must substantially advance legitimate interests of the City, the federal constitution does not require it to contain a specific explanation for each prohibition against a particular land use within the district. No such requirement was placed on the City of Tiburon, California, in *Agins, supra,* in which Tiburon had adopted a zoning ordinance governing development of open space land that limited the appellants to building between one and five single-family residences on the five acres of unimproved land which they had previously purchased for residential development. The Court accepted as sufficient the general purposes underlying the Tiburon zoning ordinance which, like the Saratoga Springs designation of conservancy districts, "will discourage the 'premature and unnecessary conversion of open-space land to urban uses.'" Cal.Govt.Code Ann. § 65561(b) (West Supp.1979)." *Agins, supra,* 447 U.S. at 261, 100 S.Ct. at 2141 (footnote omitted).

Comparable broad objectives have been repeatedly upheld as adequate in the past. *See, e.g., Village of Belle Terre v. Boraas,* 416 U.S. 1, 9, 94 S.Ct. 1536, 1541, 39 L.Ed.2d 797 (1974); *Berman v. Parker,* 348 U.S. 26, 32–33, 75 S.Ct. 98, 102, 99 L.Ed. 27 (1954); *Euclid v. Ambler Realty Co.,* 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926); *Hadacheck v. Sebastian,* 239 U.S. 394, 410, 36 S.Ct. 143, 145, 60 L.Ed. 348 (1915); *see generally Developments in the Law—Zoning,* 91 Harv.L.Rev. 1427 (1978).

■ In this case the district court did not err in finding that the prohibition of quarrying on the Pompa tract substantially furthers the stated City purposes—"conserv[ing] land by discouraging premature development and avoid[ing] undisciplined and needless urban sprawl with its consequent municipal headaches"—because quarrying is incompatible with conserving the land for future use. Testimony at trial amply supports the conclusion that establishment of a quarry on the Pompa tract would not be merely an interim use of the land (as claimed by the Pompas) but would, on completion of quarrying operations, render the land suitable only for industrial purposes, thereby foreclosing the flexibility intended by the City in establishing the conservancy districts. Not only are the City's purposes legitimate, but the establishment of a conservancy zone for the Pompa tract (with its prohibition of quarrying) substantially advances those interests.

## IV

Assessing the economic viability of land uses permitted under the City's amended ordinance, the district court found that, although the most economically beneficial use of the property would be the barred quarrying operation and appellants therefore may suffer a greater economic loss than other owners affected by the establishment of conservancy districts, there nevertheless remain available the following "beneficial and economically viable uses of the property":

---

**5.** Because the trial court adopted verbatim the City's proposed findings of fact, we have scrutinized the record with special care in deciding

whether the record supports the court's findings and judgment.

(1) limited farming operations, (2) small, single family residential development on large size lots, (3) a par three golf course with a small clubhouse, in conjunction with the housing development, (4) a roadside stand for the sale of farm produce grown on the land, (5) and home occupation businesses, places of worship, parks and playgrounds in conjunction with residential housing. The court also found that the value of the raw land itself is probably between $54,400 and $68,000, and at the very least is $34,000.

Appellants urge that the court was clearly in error in all of these findings. We hold, however, that the judge appropriately considered the relevant facts and that the record sufficiently supports his judgment in light of the governing law. The evidence is conflicting but we cannot say that the court committed clear error.

### A.

Despite appellants' claim that the City's own evidence showed that farming would not be an economically viable use of the Pompa tract, it is plain that the evidence demonstrated that the Pompa tract had been used for farming as recently as 1968, and that soil of a type and depth for growing a variety of crops covers substantial portions of the tract; these facts support the conclusion that part-time farming would be possible on portions of the property. Although this may not, by itself, prove that the ordinance allows economically viable use of the property, the finding does support the court's conclusions both that roadside farm stands would be possible in conjunction with the farming and that the marketability of the Pompa tract for residential homes on large lots would be enhanced.[6]

In connection with their contention that the trial court erroneously concluded that residential development would be an economically viable use of the property, appellants argue that the property is rendered unfit for residential development because of the quarry operations flanking either side of the 68-acre tract, and maintain that the trial judge failed entirely to "address [this] most significant overriding factor." On the contrary, finding of fact # 183 explicitly acknowledges the adjoining uses and rejects the argument that they render the Pompa tract unmarketable for residences; this finding is reasonably based on testimony to that effect by a real estate appraiser and consultant. A tract of 68 acres is a large piece of land on which it would be possible to build a number of residences adequately insulated from the quarry operations.[7]

The Pompas feel injured because the adjoining Pallette property has been allowed a special designation of I–1 (light industry) rather than conservancy, like the other surrounding land. Finding # 28 adequately explains that light industry is permitted after quarrying is finished because quarrying has been conducted as an allowed use on that land prior to the passage of the 1971 zoning amendments, thereby rendering the property fit in the future only for industrial use. Appellants did not purchase their land—with the intent to establish a quarry—until after the adoption of the amended ordinance. They cannot expect to be treated in the same manner as a pre-existing user.

Another challenge to the finding of an economically viable use of the property for residences is that bedrock formations on the Pompa tract at or close to the surface make such use impossible or very unlikely. There was, however, much testimony to support the trial judge's conclusion that, although a major residential development of the property might be precluded by the terrain, use of large individual lots for houses is not.

---

6. Some 200 part-time farming operations currently exist in Saratoga County.

7. Moreover, if the adjoining quarries would reduce the market value of the Pompa tract for homes, the trial court could appropriately consider that appellants themselves have chosen to operate one of the quarry operations of which they now complain. *See Dauernheim, Inc. v. Town Board of Hempstead,* 33 N.Y.2d 468, 472, 354 N.Y.S.2d 909, 912, 310 N.E.2d 516, 517 (1974).

Not only does the record show that there has been a house on the property in the past, but there was evidence showing that the land is marketable for home sites, that drilling residential wells is not a problem nor is the establishment of septic systems, and that there is adequate water and drainage.

Testimony of a landscape architect supports the use of part of the tract as a par 3 golf course, and other evidence is adequate to show that there is a market in the City and surrounding area for such a facility. Though appellants deride this possibility, and apparently believe that only full size golf courses can be economically viable, we cannot so conclude. That par 3 courses are smaller in size does not mean that they cannot be profitable. The hard fact that they exist is evidence that at least some such courses bring a reasonable return on the owner's investment.

Similarly, appellants' argument against use of the land for places of worship is misplaced. It is true, as they say, that places of worship are not in themselves economic enterprises. But the key question is not whether a place of worship could be a profitable enterprise for the Pompas, but whether religious groups might be interested in purchasing all or part of the land from appellants for such a purpose. The record does support that possibility.

## B.

■ All this demonstrates sufficient basis in the record for the district court's findings and conclusions that the permitted uses are beneficial and economically viable. That each use might not be, by itself, an economically viable use of the whole property is immaterial. The record supports the conclusion that large-lot residential development would by itself be an economically

viable use of the land, and the other possible uses discussed by the district court could add to the marketability of the tract. Appellants answer that, even if these uses are technically feasible, that does not mean that they are economically viable, citing *Mary Chess, Inc. v. City of Glen Cove,* 18 N.Y.2d 205, 211, 273 N.Y.S.2d 46, 50, 219 N.E.2d 406, 409 (1966). But the New York Court of Appeals in *Mary Chess* clearly placed the burden on those challenging the constitutionality of an ordinance to demonstrate at trial that none of the permitted uses which are technically feasible would be economically viable. *Id.* 273 N.Y.S.2d at 49, 219 N.E.2d at 408. The district court permissibly found that appellants had failed to make that showing. The burden was not on the City to prove the economic viability of each permitted use by dollars and cents data. Appellants presented no evidence indicating that any of these possibilities had been actually attempted by them since the purchase of the land, nor is there any indication that they attempted to sell or lease the land for any permitted use. *See Forrest v. Evershed,* 7 N.Y.2d 256, 262, 196 N.Y.S.2d 958, 962, 164 N.E.2d 841, 843 (1959) (no showing made by those requesting zoning variance of bona fide efforts to sell property at issue).

■ The record thus sustains the district court's determinations as to the specific viable uses of the tract, but even if appellants were only able to sell the Pompa tract for $34,000, the lowest amount suggested by their own witness, we would be hard put to say that that would be an inadequate return, failing to meet the requirement of economic viability. This is particularly so because appellants purchased the tract with full knowledge of the restrictions placed on use by the City's zoning ordinance.[8] In

8. *Appellants may have the right to attack the ordinance even though they purchased knowing of it (see Vernon Park Realty, Inc. v. City of Mount Vernon,* 307 N.Y. 493, 121 N.E.2d 517 *(1954)), but their deliberate action can be taken into account in evaluating economically viable use. When they purchased, they may have expected to obtain invalidation of the amend-*

ment but they must also have considered that their attack could be unsuccessful and that they would be left with a tract that could not be quarried. (Unlike Vernon Park Realty, Inc., appellants did not reserve the right to reconvey the property if they were unable to change the existing zoning.) It is reasonable to infer that the Pompas did not anticipate that, even if the

*Euclid v. Ambler,* 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926), the Supreme Court sustained a 75% reduction in property value caused by the enactment of a zoning law after purchase of the land. Similarly, in *Hadacheck v. Sebastian,* 239 U.S. 394, 36 S.Ct. 143, 60 L.Ed. 348 (1915), the Court upheld a diminution in value of approximately 90% ($800,000 to $60,000). Recently the Ninth Circuit upheld a district court's decision that "the impairment of the economic value of the property, although substantial, was not sufficient to give rise to a constitutional claim to just compensation," *Haas v. City of San Francisco,* 605 F.2d 1117, 1118 (9th Cir.1979), *cert. denied,* 445 U.S. 928, 100 S.Ct. 1315, 63 L.Ed.2d 761 *reh. den.* 446 U.S. 929, 100 S.Ct. 1867, 64 L.Ed.2d 282 (1980), where the value of the property was reduced from about $2,000,000 to about $100,000. *Id.* at 1120.

■ On this record, appellants' loss could be no worse than those losses. "Although no precise rule determines when property has been taken, [and] the question necessarily requires a weighing of private and public interests," *Agins v. City of Tiburon,* 447 U.S. 255, 260–61, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106 (1980), we cannot disagree with the district court below that the weight of interests in this case favors the City. The economic value of the property has not been destroyed, nor is "all but a bare residue of its value" remaining. *French Investing Co., Inc. v. City of New York,* 39 N.Y.2d 587, 596, 385 N.Y.S.2d 5, 10, 350 N.E.2d 381, 386 (1976). Appellants have not demonstrated clear error in the judge's findings regarding economic viability. They may

have shown hardship but did not prove confiscation. However,

> Legislation designed to promote the general welfare commonly burdens some more than others.... [Z]oning laws often affect some property owners more severely than others but have not been held to be invalid on that account. For example, the property owner in *Euclid* who wished to use its property for industrial purposes was affected far more severely than its neighbors who wished to use their land for residences.

*Penn Central Transportation Co. v. New York City,* 438 U.S. 104, 133–34, 98 S.Ct. 2646, 2663–2664, 57 L.Ed.2d 631 (1978). *See also Haas v. City of San Francisco, supra,* 605 F.2d at 1121.

For these reasons,[9] we accept the district court's findings that the Pompa tract has economically viable uses other than quarrying and its holding that the challenged zoning ordinance substantially advances the City's legitimate interests. There was no violation of appellants' constitutional rights.

Affirmed.

---

ordinance were upheld, the land would lack substantial value.

**9.** Appellants maintain that the district court erred in making several findings that a quarry operation on the Pompa tract might have some

harmful environmental side effects on neighboring properties. Because we hold that there is sufficient support for the court's conclusions independent of those findings, there is no need to resolve that particular dispute.