Martin ELIAS, Plaintiff,

v.

The TOWN OF BROOKHAVEN, the Planning Board of the Town of Brookhaven, and the Town Board of the Town of Brookhaven, as constituted by its members, Defendants.

No. 89 CV 1424.

United States District Court, E.D. New York.

Jan. 9, 1992.

---

Bernard L. Burton, Melville, N.Y., for plaintiff.

David P. Fishbein, Town Atty., Town of Brookhaven, Medford, N.Y., for defendants.

Snitow & Pauley (William H. Pauley, III, Charles D. Cunningham, Mark M. Holtzer, of counsel), New York, N.Y., Special Counsel for defendants.

## MEMORANDUM AND ORDER

NICKERSON, District Judge.

The basic facts of this case appear in this court's Memorandum and Order dated January 11, 1991, familiarity with which is assumed. Plaintiff Elias filed suit against the Town of Brookhaven and its Planning Board and Town Board, seeking to restrain enforcement of a zoning ordinance passed by the town. Before adoption of the ordinance, Elias's property was zoned for commercial use. He alleges he bought an 18.09 parcel of property in the Town of Brookhaven on July 14, 1986 for $454,-755.20 and planned to develop it as a shopping center and to that end submitted several environmental reports required under state law.

During the period while the environmental impact was being reviewed the town had hired consultants to prepare a master plan for land use throughout the town. Pursuant to that plan and on July 5, 1988 the town changed, among other things, the zoning classification of various parcels of commercial land, including that owned by Elias, to allow only residential use.

Elias filed suit alleging that the new ordinance was not rationally related to any legitimate objectives of the town, and in any event so devalued and destroyed the economic and use value of the property as to constitute a "taking" within the meaning of the Fifth Amendment to the United States Constitution as applied to the states through the Fourteenth Amendment. He also argues in a supplemental submission that the ordinance constitutes "spot zoning" in violation of the Equal Protection clause of the Fourteenth Amendment.

This court treated defendants' motion to dismiss as one for summary judgment and directed the parties "to file and serve such further papers as they desire but particularly addressed to the issue whether the zoning ordinance as amended deprives plaintiff of all economically viable use of his property."

### I.

■ There is no merit in Elias's equal protection argument.

He says that because his land "borders on major heavily trafficked highways with attendant noise, pollution and safety hazards to pedestrians and small children", the land is "not at all rationally related to the residential use" for which it is now zoned.

On its face the change in zoning does not appear to be discriminatory against Elias. Defendants have submitted evidence that the Town Board considered preservation of the environment, control of excessive commercial development, and prevention of traffic congestion among the reasons for rezoning the land. These are legitimate town concerns.

But Elias says that the principal purpose "advanced" by defendants for the residential zoning was to limit the potential for development of "unneeded" shopping centers. Even if this were the chief reason for

adoption of the ordinance, defendants' determination was hardly unreasonable.

Moreover, the zoning change throughout the town was made pursuant to a comprehensive plan and legitimate criteria. The ordinance thus did not single out Elias. Indeed, he recognized as much in his amended complaint when he alleged that "the Town was concerned with the overall proposed commercial development of the Town without regard to the specific site characteristics of the subject parcel." Where zoning is made in accordance with an overall plan it can hardly be the "spot zoning" that Elias claims.

Elias's brief and a supplemental declaration of his counsel suggest that the ordinance was enforced against him in a discriminatory manner because the town provided others "in similar cases" with "hardship relief" but did not do the same for him. He has provided absolutely no evidence that others received such "relief" or that anyone who did was similarly situated to him. Mere generalized allegations will not defeat a motion for summary judgment. *Park Ave. Tower Assocs. v. City of New York*, 746 F.2d 135, 141 (2d Cir.1984).

## II.

Elias's chief argument rests on that part of the Fifth Amendment of the Constitution of the United States that provides "nor shall private property be taken for public use, without just compensation." This prohibition applies against the States through the Fourteenth Amendment. *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 160, 101 S.Ct. 446, 450, 66 L.Ed.2d 358 (1980), and cases cited. The objective of the guarantee against an uncompensated "taking" was to bar government "from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States*, 364 U.S. 40, 49, 80 S.Ct. 1563, 1569, 4 L.Ed.2d 1554 (1960).

Not surprisingly the Supreme Court has not developed any "set formula" for determining when "fairness and justice" require that economic injuries occasioned by public action be compensated by government. *Penn Central Transp. Co. v. City of New York*, 438 U.S. 104, 124, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631 (1978). Indeed, at times the Supreme Court has gone so far as to say that the issue is an "ad hoc" factual inquiry dependent on the "particular facts" of the case. *Kaiser Aetna v. United States*, 444 U.S. 164, 175, 100 S.Ct. 383, 390, 62 L.Ed.2d 332 (1979); *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 495, 107 S.Ct. 1232, 1247, 94 L.Ed.2d 472 (1987); *United States v. Central Eureka Mining Co.*, 357 U.S. 155, 168, 78 S.Ct. 1097, 1104, 2 L.Ed.2d 1228 (1958).

It is clear why no mechanical formula would be satisfactory in every case to determine when a "taking" of "private property" has occurred. "Property" is simply the bundle of rights which someone by law has in something or in some relationship. *See Kaiser Aetna v. United States*, 444 U.S. at 176, 100 S.Ct. at 391. One "property" may be of quite a different kind than another. The type of government action may also vary. It may constitute an outright invasion of the property, that is, an acquisition of all the rights appertaining to it, or the government may interfere with only some of those "rights" and not with others. Some property may include the right to be free from interference from private persons but not from government itself. *See Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984).

In saying that the determination of whether a taking has been made involves an "ad hoc" inquiry dependent on the "particular facts", the Supreme Court seems to have had these kinds of considerations in mind. It surely did not leave the lower courts at large to decide as they saw fit, but merely recognized that there are different kinds of "property" and of "taking", not all of which can be analyzed by reference to the same criteria. Thus, in the *Penn Central* case, the Court identified several factors of "particular significance", namely, the economic impact on the claimant of the regulation, its interference with distinct investment-backed expectations,

and the character of the government action. 438 U.S. at 124, 98 S.Ct. at 2659.

By now the criteria for applying these generalized factors in zoning cases is fairly well-established. In summary, as stated by the Supreme Court in *Agins v. Tiburon,* 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980), the "application of a general zoning law to particular property effects a taking if the ordinance does not substantially advance legitimate state interests ... or denies an owner economically viable use of his land." *Id.* at 260, 100 S.Ct. at 2141 (citations omitted).

Elias says that the ordinance advanced no legitimate town interests. For reasons already stated, the court rejects this contention.

Elias also claims that the ordinance has "destroyed" the "marketability" of the land. His brief asserts that he suffered not from a "mere diminution in value" but from a loss of any "economic viability" in the property. He characterizes the ordinance as amounting to a "confiscation".

This is patently not so. For residential use, defendants' experts valued the property at about $530,000, and Elias's experts at about $350,000. Even Elias's figures hardly bespeak confiscation.

Elias says that he has spent some $640,-000 on the property. He does not break down this figure, but presumably a part of it represents his purchase price in 1986 of $454,755.20 and a part the expenditures he made in preliminary planning for a shopping center, including the preparation of environmental impact reports. He also says he has been "deprived of a reasonable rate of return", estimated to be $250,000, on his $640,000 expenditure, for a total loss of $890,000. He submits no documentation to support this estimate, but argues that he had a reasonable investment-backed expectation that he would not be subjected to such a loss and indeed would be permitted to build his shopping center and realize a profit.

To establish a "taking" it is, of course, not enough to show a subjective expectation of making a profit or even of recovering all of one's investment. The test must be an objective one. The expectation must be reasonable in that it is one that the law will recognize. In the context of this case, the question is whether a landowner has as a matter of law an assurance that the zoning regulations will never change.

The question almost answers itself. Nothing in the town's zoning laws or in any New York State law suggests that such an assurance has been made either explicitly or implicitly. If there is one thing that the history of zoning regulation has established it is that as time passes and population increases (or diminishes) zoning restrictions change.

The Fifth Amendment itself does not guarantee to an investor in land that the existing zoning regulation will remain unchanged. *See, e.g., Park Ave. Tower Assocs. v. City of New York,* 746 F.2d at 140; *Penn Central Transp. Co. v. City of New York,* 438 U.S. at 130, 98 S.Ct. at 2662. To hold otherwise would be to draw into question the effective power of a locality to plan for the future needs of its residents. Nor does the loss of profit or of the right to make the most profitable use of the property constitute a taking. *Sadowsky v. New York,* 732 F.2d 312, 317 (2d Cir.1984). The key question is whether other persons "might be interested in purchasing all or part of the land" for permitted uses. *Pompa Constr. Corp. v. Saratoga Springs,* 706 F.2d 418, 424 (2d Cir.1983).

The very situation faced by the Town of Brookhaven shows the wisdom of these holdings. The town contains a vast area whose population has been increasing rapidly. As a result, the complexity and character of the community have also changed rapidly. Someone investing in land in July 1986 hardly required a crystal ball to anticipate that the rational use of land in the town would require further comprehensive planning and consequent zoning changes to protect what its responsible officials deemed the interests of the residents.

Had the town's 1988 ordinance so diminished the value of the land that it could not be sold for more than a nominal amount, the court would have before it a different case. But, as noted above, the property

has substantial value as zoned for residential use. Regulations causing diminution in value of land by large percentages have consistently been held not to be takings. *See, e.g., Hadacheck v. Sebastion,* 239 U.S. 394, 405, 36 S.Ct. 143, 144, 60 L.Ed. 348 (1915) (87½%); *Euclid v. Ambler Realty Co.,* 272 U.S. 365, 384, 47 S.Ct. 114, 117, 71 L.Ed. 303 (1926) (77%); *Pompa Constr. Corp.,* 706 F.2d at 420 n. 2, 424 (77%).

The court concludes that the town's zoning ordinance did not accomplish a "taking" of Elias's property.

### III.

Elias has made various state law claims, both substantive and procedural, none of which raises any substantial issue of federal law. The court declines to exercise pendent jurisdiction to decide the validity of these state law claims. *Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988).

The motion of defendants for summary judgment is granted, and the complaint is dismissed. So ordered.