**SAG HARBOR PORT ASSOCIATES,**
Plaintiff,

v.

**VILLAGE OF SAG HARBOR, Defendant.**

No. 95 CV 3549.

United States District Court,
E.D. New York.

Sept. 11, 1998.

Robert M. Calica, Reisman, Peirez, Reisman & Calica, Garden City, NY, for Plaintiff.

Warren H. Richmond, Ingerman, Smith, Greenberg, Gross, Richmond, Heidelberger & Reich, Northport, NY, for Defendant.

## *OPINION AND ORDER*

GERSHON, District Judge.

Plaintiff Sag Harbor Port Associates alleges that defendant Village of Sag Harbor enacted an unlawful zoning ordinance in violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, the Takings Clause of the Fifth Amendment, and New York State law. Plaintiff seeks a judgment declaring the zoning ordinance unconstitutional, void, unenforceable and unlawful under New York State law; enjoining defendant from enforcing the ordinance; directing defendant to grant plaintiff a special use permit to develop its land; and awarding plaintiff approximately nine million dollars in damages. Defendant moves for summary judgment. For the reasons set forth below, defendant's motion is granted.

## FACTS

Unless otherwise noted, the following facts are undisputed:

In 1982, Plaintiff purchased a nine acre parcel of undeveloped land in the Village of Sag Harbor (the "Village") on Long Island. Plaintiff's land is known as the "old Cilli Farm" and is located on the former site of a dairy farm dating back to the early 1900s. Since 1981, the property has been part of an R–20 zoning district, an area restricted by the Village zoning code (the "Code") primarily to single-family homes. Prior to 1984, the construction of recreational and community facilities in the R–20 district was limited to municipal parks and playgrounds, public libraries and museums, fire stations, and municipal offices. In 1984, however, the Village Board of Trustees ("Village Board") amended the Code to permit various "special exception uses," including tennis clubs.[1] The Zoning Board of Appeals ("Zoning Board") is now authorized to grant "special use" permits to applicants whose proposals satisfy eleven conditions delineated in § 55–13.3 of the Code.[2]

In June 1994, plaintiff applied to the Zoning Board for a permit to construct a tennis club on its property. Plaintiff described the club as follows:

> ....[T]he initial construction of four permanently enclosed courts, a two story clubhouse (clubhouse 2550 sq. ft. footprint) and a parking area. Future expansion of the facility (four additional tennis courts) is also included as part of the subject application. Enclosure of the courts (seasonal and permanent) will be made by opaque

polyester fabric supported by forced air (i.e. an air structure).

Plaintiff had applied previously for permits to construct a residential housing development and a nursing home, but had withdrawn each application before the Zoning Board had completed its review. According to plaintiff, its prior proposals were met with vigorous opposition from community members and groups opposed to development of its land, and it eventually withdrew the applications because the Village's unfounded resistance caused the deals to falter.

In anticipation of similar opposition, plaintiff submitted a lengthy draft environmental impact statement ("DEIS") with its application for the tennis club. The Zoning Board began consideration of plaintiff's application in August 1994. The application necessitated review under the State Environmental Quality Review Act, New York Environmental Conservation Law, Art. 8, §§ 101 *et seq.* ("SEQRA"),[3] as well as the Code, and in September 1994, the Zoning Board passed a resolution directing its chairman to forward a Lead Agency Notification and Request for Comments to the New York State Department of Environmental Conservation. In October 1994, the Zoning Board designated itself as lead agency under SEQRA.

The Zoning Board held public hearings in November and December 1994, during which it requested comments from town residents. It is undisputed that a significant number of community members were opposed to the tennis club and voiced their opposition during the hearings and in individual letters and group petitions to the Zoning Board. Village

1. The other "special exception uses" include bus passenger facilities, cemeteries, beach clubs, nursing homes and health related facilities, philanthropic, fraternal, social and educational facilities, public utility and right of way structures, sewage treatment plants and water supply facilities.

2. Among the conditions listed are requirements that: a) the use will promote the general purposes and intent of the zoning code; b) the plot area is sufficient, appropriate and adequate for the use intended; c) the proposed use will not prevent the orderly and reasonable use of adjacent properties; and d) the site is particularly suitable for the location of such use.

3. The purpose of SEQRA is to ensure the environmental integrity of building projects. Its primary mechanism for assessing projects is through an Environmental Impact Statement (EIS) prepared by the applicant or the agency. If the impact statement is deemed inadequate by the lead agency, it must identify the deficiencies and provide the applicant with an opportunity to submit a revised EIS. After the second EIS is submitted, there is an opportunity for public comment, following which a final EIS is filed. Within the next thirty days, the lead agency is required to file written findings and a decision whether to approve the action. *See generally, Cedarwood Land Planning v. Town of Schodack,* 954 F.Supp. 513, 515–17 (N.D.N.Y.1997).

residents cited increased noise and traffic, the visual impact, and potential drainage problems as their primary concerns. A smaller number of Village residents voiced their support for the club.

During a meeting in December 1994, the Zoning Board notified plaintiff of its environmental concerns. Following the meeting, plaintiff prepared a "scoping outline," listing the issues identified by the Zoning Board. The Zoning Board reviewed the outline in January 1995, after which plaintiff agreed to file a supplemental DEIS addressing the environmental issues in more detail. Thereafter, the Zoning Board adjourned consideration of plaintiff's application indefinitely, pending submission of the report. Between January and June 1995, the Zoning Board held three additional meetings during which plaintiff's application appeared on the calendar. Consideration of the application was adjourned on each occasion, however, because plaintiff had not completed the supplemental report.

In March 1995, while plaintiff's application was still pending before the Zoning Board, the Village Board began consideration of proposed Local Law No. 2 of 1995. The proposed law deleted tennis clubs as a "special exception use" from § 55-4.3 of the Code. The Village Board conducted two public hearings in April and May, during which it requested comments about the proposed law. Plaintiff did not appear at either meeting. On June 6, 1995, the Village Board concluded that the proposed law would have no impact on the environment and, thus, issued a negative declaration under SEQRA. During the same meeting, the Village Board adopted Local Law No. 2.

Defendant asserts that the purpose of enacting Local Law No. 2 was to preclude the operation of commercial tennis facilities in a residential district. According to defendant, Local Law No. 2 potentially affects at least eighteen parcels of land in the R-20 district. Defendant further asserts that a number of reasonable uses, including residential housing, are still available to plaintiff under the Code and that, therefore, there has been no constitutionally cognizable loss in value to plaintiff's land.

Plaintiff argues that the Village Board adopted Local Law No. 2 in conspiracy with the Zoning Board, as a means to forestall its proposal and to appease community members opposed to the development. Plaintiff disputes defendant's claim that the law potentially affects eighteen parcels of land in the R-20 district, asserting that none of those parcels is suitable for the construction of tennis courts. As further evidence that Local Law No. 2 targets only plaintiff's land, plaintiff observes that tennis facilities remain permitted in the RM (resort motel) district directly adjacent to its property. Moreover, relying on an appraisal from Timothy Barnes, a professional real estate appraiser, and on the affidavit of Alan Orenstein, president of Sag Harbor Port Associates, plaintiff states that the value of its land has decreased by at least 83%, and possibly by 100%, since the passage of Local Law No. 2. According to plaintiff, no reasonable investor would be interested in purchasing its land given the Village's targeted re-zoning of the property and its efforts to forestall development plans.

In support of its conspiracy theory, plaintiff notes that the Village mayor, Pierce Hance, attended at least one of the public hearings before the Zoning Board, then denied being present during a deposition taken in connection with this case. In addition, plaintiff intimates that the Village attorney, Anthony Tohill, was at least partially responsible for maneuvering the delay. Plaintiff observes that Tohill recommended in September 1994 that the Zoning Board defer formal consideration of the application, explaining "that he did not see any harm on holding off on a determination of significance.... [and] he thought it would be more important in a small community such as Sag Harbor to pay less attention to the rigid formality of SEQRA and more attention to the merits of what the public has to say."

Defendant concedes that Hance knew of the community opposition to plaintiff's application. In fact, according to defendant, Hance participated in drafting Local Law No. 2 in direct response to such opposition. However, defendant points out that plaintiff, itself, delayed the proceedings by failing on

numerous occasions to submit the supplemental report.

## DISCUSSION

Motions for summary judgment are granted if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *See Lipton v. Nature Co.,* 71 F.3d 464, 469 (2d Cir.1995). The moving party must demonstrate the absence of any material factual issue genuinely in dispute. *See id.* The court must view the inferences to be drawn from the facts in the light most favorable to the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). However, the non-moving party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 12 (2d Cir. 1986); the party must produce specific facts sufficient to establish that there is a genuine factual issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### The Due Process Claims

A party asserting a deprivation of due process must first establish a property interest within the meaning of the Constitution. In the context of a zoning dispute, the party must demonstrate that it had a valid property interest in a benefit protectable under the Fourteenth Amendment at the time of the alleged deprivation. *See Zahra v. Town of Southold,* 48 F.3d 674, 680 (2d Cir. 1995). Since property interests are not created by the Constitution, federal courts look instead to "existing rules or understandings that stem from state law—rules or understandings that secure certain benefits and that support claims of entitlement to those

benefits." *Board of Regents v. Roth* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

The parties dispute whether plaintiff would have been entitled to a special use permit had the law not been changed to eliminate tennis clubs as a special use.[4] This dispute is immaterial because, whether or not plaintiff's application satisfied the requirements under § 55–13.3, plaintiff had no vested interest in the classification of its property. *See Ellentuck v. Klein,* 570 F.2d 414, 429 (2d Cir.1978); *Elias v. Town of Brookhaven,* 783 F.Supp. 758, 761 (E.D.N.Y.1992); *Sudarsky v. City of New York,* 779 F.Supp. 287, 297 (S.D.N.Y.1991), *aff'd,* 969 F.2d 1041 (2d Cir.), *cert. denied,* 507 U.S. 980, 113 S.Ct. 1437, 122 L.Ed.2d 803 (1993). That is, as a matter of law, plaintiff had no assurance that the zoning regulations would remain unchanged. "Nothing in the town's zoning laws or in any New York State law suggests that such an assurance has been made either explicitly or implicitly. If there is one thing that the history of zoning regulation has established it is that as time passes and population increases (or diminishes) zoning restrictions change." *Elias,* 783 F.Supp. at 761. Indeed, when plaintiff purchased its land in 1982, the Code did not permit tennis clubs. Tennis clubs were added to the code as a "special exception use" only in 1984.

Had plaintiff received the permit and begun construction before the enactment of Local Law No. 2, it may have been able to establish a vested right to complete the project because, under New York law, whenever a more restrictive zoning ordinance is enacted, a property owner is permitted to complete a nonconforming project if substantial expenditures were made prior to the effective date of the new law. *See Sudarsky* 779 F.Supp. at 296. Because plaintiff had not

4. Plaintiff argues that its application fully complied with the conditions delineated in § 55–13.3 and, thus, that it was legally entitled to the special permit. Defendant contends that at least four of the eleven conditions listed in the Code are broad in nature and allowed the Zoning Board wide discretion to grant or deny the application. In determining whether a party is legally entitled to a zoning permit, a court must consider whether "absent the alleged denial of due

process, there is either a certainty or a very strong likelihood that the application would have been granted." *Yale Auto Parts, Inc. v. Johnson,* 758 F.2d 54, 59 (2d Cir.1985). To measure the applicant's chances of receiving the permit, courts measure the level of discretion allotted zoning boards to grant or deny permits. *See Crowley v. Courville,* 76 F.3d 47, 52 (2d Cir. 1996).

received the permit, however, let alone begun construction, plaintiff fails to establish a constitutionally protected property interest.

Plaintiff argues that the Zoning Board conspired with the Village Board to delay consideration of its application, thereby allowing the Village Board time to enact Local Law No. 2 before the Zoning Board was obliged to grant plaintiff's permit. *Cf. Orange Lake Associates, Inc. v. Kirkpatrick,* 825 F.Supp. 1169, 1177 (S.D.N.Y.1993), *aff'd,* 21 F.3d 1214 (2d Cir.1994) ("[I]f the reason for the eventual denial of approval for Plaintiff's project was the existence of the recently passed zoning amendment and the reason the proposal was not approved before the passage of the new amendment was delay on the part of Defendan[t], and Defendant'[s] delay was arbitrary or capricious, Plaintiff may conceivably have a protected property interest."). However, none of the evidence submitted by plaintiff raises an issue of fact as to the existence of a conspiracy or, even more basically, as to actual delay on the part of defendant.

According to plaintiff, the Village Board's illicit motives may be inferred from Hance's deposition testimony in which he denied attending a Zoning Board meeting during which plaintiff's application was discussed. Orenstein states in his affidavit that he saw Hance there. Plaintiff contends that Hance denied attending the meeting in order to conceal his knowledge that plaintiff's application was pending before the Board. Viewing the evidence in the light most favorable to plaintiff, that is, even if Hance was dishonest (as opposed to mistaken or forgetful) during his deposition, no material issue of fact is created. Hance readily acknowledged that he was aware of plaintiff's application and the opposition it engendered. In fact, he stated that he reviewed the Code and participated in drafting Local Law No. 2 in direct response to such opposition. That Hance may

have attended a Zoning Board meeting is not evidence that he participated in improperly delaying the proceedings or that the proceedings were in fact improperly delayed.

Plaintiff further asserts that Tohill "legally orchestrated" the adoption of Local Law No. 2 while simultaneously acting as counsel to the Zoning Board, thereby intimating that he also assisted in maneuvering the delay. Plaintiff focuses on Tohill's statement during the September Zoning Board meeting that "he did not see any harm" in postponing a determination under SEQRA. However, since plaintiff cannot offer any evidence that the SEQRA proceedings were *actually* delayed, Tohill's statement is immaterial. In fact, Plaintiff's failure to submit the supplemental report caused the only significant delay in the application proceedings as a whole. In December 1994, upon requesting the "scoping outline", Tohill attempted to ensure that the proceedings progressed efficiently, explaining:

> Everyone should be aware that after the draft Environmental Impact Statement is given to the board and considered complete then there would be further opportunity for people to speak. I would recommend for everyone's interest to permit the process to reach the next level. Complete the scoping check list and now get into supplementary draft Environmental Impact Statement and after that is prepared everyone can reconvene and talk about the matter on its merits.

Moreover, the Zoning Board held three meetings during which plaintiff's application appeared on the calendar between March 1995, when proposed Local Law No. 2 was introduced, and June 1995, when the law was passed. Consideration of plaintiff's application was adjourned on each occasion solely because plaintiff had neglected to submit the supplemental report.[5]

---

5. Plaintiff also alleges that it was deprived of procedural due process because the change in the law denied it the opportunity to appeal the Zoning Board's decision pursuant to Article 78 of the New York Civil Practice Law and Rules. To establish a claim for the denial of procedural due process, a party must first show a legal entitlement to the benefit denied. *See Koncelik v. Town*

*of East Hampton,* 781 F.Supp. 152, 157 (E.D.N.Y.1991). Here, since the Zoning Board never denied plaintiff's application, plaintiff fails to establish that it was denied a benefit, let alone that it was legally entitled to the benefit denied. Had plaintiff believed it was denied the right to an efficient application process, it could have

Accordingly, since plaintiff had no vested interest in the classification of its property, and since plaintiff has not raised a factual issue as to conspiracy, plaintiff's due process claim fails as a matter of law.

### The Equal Protection Claim

■ To establish a claim under the Equal Protection Clause, a party must show that it was treated differently in comparison with other parties similarly situated and that there was no rational basis for that treatment. *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439–40, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). Defendant argues that Local Law No. 2 potentially affects eighteen other parcels of land in the R–20 district. Plaintiff contends that, as a practical matter, no other parcels are affected by the new law. In his affidavit, Orenstein states that none of the eighteen parcels identified by defendant is suitable for the construction of tennis courts because they are either too small or already developed.

■ This dispute is immaterial. Local Law No. 2 does not target plaintiff. To the contrary, it applies equally to every property owner in the R–20 district. That plaintiff may be the only property owner presently interested in constructing a tennis club and, therefore, the only property owner presently affected by the law does not prove a violation of the Equal Protection Clause. A law is underinclusive only if it fails to include all who are similarly situated and thereby burdens fewer than necessary to achieve the intended government end. *Cf. Williamson v. Lee Optical of Oklahoma, Inc.*, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955) (upholding as sufficiently inclusive a law subjecting opticians to a regulatory system from which sellers of ready-to-wear glasses were exempted). Plaintiff has provided no evidence that Local Law No. 2 treats plaintiff any differently from other property owners interested in developing their land, let alone those interested in constructing tennis courts. *See Cedarwood*, 954 F.Supp. 513 at 525. *Cf. Del Monte Dunes at Monterey, Ltd. v. City of Monterey* 920 F.2d 1496, 1508–09 (9th Cir.), *cert. granted,* —— U.S. ——, 118 S.Ct. 1359,

140 L.Ed.2d 509 (1998) (plaintiff raised a genuine issue of selective treatment when city attempted to create a "butterfly park" only on plaintiff's land); *Kirschner v. Zoning Bd. of Appeals of Incorporated Village of Valley Stream*, 924 F.Supp. 385, 391 (E.D.N.Y.1996) (plaintiff raised a genuine issue by showing that another auto body shop received the same permit that plaintiff was denied).

■ Plaintiff also fails to raise a factual issue as to the Village Board's alleged improper motive for enacting Local Law No. 2. Courts presume the validity of state legislation and sustain the actions of state legislatures so long as they are rationally related to a legitimate state interest. *See Heller v. Doe*, 509 U.S. 312, 319, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993); *City of Cleburne*, 473 U.S. at 440, 105 S.Ct. 3249; *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 265, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977). In fact, whenever there exist plausible reasons for enacting a statute—whether or not those are the legislature's actual reasons for adopting the law—a court's "inquiry is at an end." *United States Railroad Retirement Bd. v. Fritz*, 449 U.S. 166, 179, 101 S.Ct. 453, 66 L.Ed.2d 368 (1980). *See also Somers Realty Corp. v. Harding*, 886 F.Supp. 386, 390 (S.D.N.Y. 1995) (emphasizing "the limited weight that courts can ascribe to hidden legislative intent, especially when a statute is constitutional on its face"). Plaintiff argues that the Village Board's true purpose in passing the law was to appease community members opposed to the development of the Cilli Farm. Plaintiff has failed to establish that this was the Village Board's only reason for its actions. *Cf. Village of Arlington Heights*, 429 U.S. at 265 ("Rarely can it be said that a legislature or administrative body operating under a broad mandate made a decision motivated solely by a single concern, or even that a particular purpose was the 'dominant' or 'primary' one. In fact, it is because legislators and administrators are properly concerned with balancing numerous competing considerations that courts refrain from re-

challenged that procedure pursuant to Article 78

prior to the enactment of Local Law No. 2.

viewing the merits of their decisions, absent a showing of arbitrariness or irrationality.") And a long line of Supreme Court cases demonstrates the validity of residential zoning laws, *see e.g., Village of Belle Terre v. Boraas,* 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974); *Village of Euclid v. Ambler Realty Co.,* 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926), as well as historic and aesthetic preservation laws. *See Penn Central Transportation Co. v. City of New York,* 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978). Responding to the interests of a community in limiting development is entirely appropriate. In a democracy, community input is not only desirable; it is essential. As noted above, a significant number of community members were opposed to the construction of the tennis club because they feared increased noise and traffic in a district generally limited to single-family homes. Thus, even if the Village Board amended the Code in part based on community opposition, that decision was not irrational.

Since there is no evidence that plaintiff was treated differently from other parties similarly situated or that the adoption of Local Law No. 2 was irrational, plaintiff's equal protection claim fails as a matter of law.

### *The Takings Claim*

■ A party is required to seek compensation from the State prior to asserting a regulatory takings claim, if the State "has a reasonable, certain and adequate provision for obtaining compensation." *See e.g., Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City,* 473 U.S. 172, 194, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985) *quoting, Regional Rail Reorganization Act Cases,* 419 U.S. 102, 124, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974). Under New York law, a compensable de facto taking may be established by showing "a legal interference with the physical use, possession or enjoyment of the property or a legal interference with the owner's power of disposition of the property." *City of Buffalo v. J.W. Clement Co.,* 28 N.Y.2d 241, 321 N.Y.S.2d 345, 269 N.E.2d 895 (1971). Since New York has a provision for awarding compensation and plaintiff did not seek compensation in New York State court, plaintiff's takings claim is unripe. *See Sudarsky,* 779 F.Supp. at 301.

■ Even were the claim ripe, and viewing the evidence in the light most favorable to plaintiff, plaintiff's takings claim would fail. As Judge Nickerson states in *Elias:*

> To establish a "taking" it is, of course, not enough to show a subjective expectation of making a profit or even of recovering all of one's investment. The test must be an objective one. The expectation must be reasonable in that it is one that the law will recognize. In the context of this case, the question is whether a landowner has as a matter of law an assurance that the zoning regulation will never change. The question almost answers itself. Nothing in the town's zoning laws or in any New York State law suggests that such an assurance has been made either explicitly or implicitly.

783 F.Supp. at 761. Nor does the Fifth Amendment guarantee that zoning restrictions will remain unchanged.

■ A demonstrated decrease in the value of one's property is insufficient to constitute a taking. *See Penn Central,* 438 U.S. at 131, 98 S.Ct. 2646. Rather, a party must prove that the State has deprived it of "all reasonable uses" of its land. *Dean Tarry Corp. v. Friedlander,* 650 F.Supp. 1544, 1550 (S.D.N.Y.1987), *aff'd,* 826 F.2d 210 (2d Cir. 1987). "[T]he key question is whether other persons 'might be interested in purchasing all or part of its land for permitted uses.' " *Elias* 783 F.Supp. at 761. Plaintiff has proffered an expert opinion that the value of its property has decreased substantially since the enactment of Local Law No. 2. However, plaintiff's contention that "*no* reasonable investor would be interested in purchasing all or part of the land for remaining permitted uses" is purely speculative. A wide variety of uses remain available under the Code, including, most obviously, using the land for residential purposes. Thus, plaintiff's takings claim fails as a matter of law.

### *The State Law Claims*

Since plaintiff fails to raise any genuine issues with respect to its federal claims, plaintiff's state law claims shall also be dismissed. "[W]hen all federal claims are eliminated in the early stages of litigation, the balance of factors generally favors declining to exercise pendent jurisdiction over remaining state law claims and dismissing them without prejudice." *Tops Markets, Inc., v. Quality Markets, Inc.,* 142 F.3d 90, 103 (2d Cir.1998). *See also Carnegie–Mellon University v. B. Cohill, Jr.,* 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988).

### CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is hereby granted. The clerk is directed to enter judgment dismissing the complaint.

**SO ORDERED.**