**PARK AVENUE TOWER ASSOCIATES and 40 Eastco, Plaintiffs-Appellants,**

v.

**The CITY OF NEW YORK, Defendant-Appellee.**

**No. 1145, Docket 84–7128.**

United States Court of Appeals, Second Circuit.

Argued June 28, 1984.
Decided Oct. 12, 1984.

---

Peter M. Fishbein, New York City (Gerald Sobel, Maris Veidemanis, Kaye, Scholer, Fierman, Hays & Handler, New York City, of counsel), for plaintiffs-appellants.

Frederick A.O. Schwarz, Jr., Corp. Counsel, New York City (Leonard Koerner, Ronald E. Sternberg, Albert G. Fredericks, Michael S. Adler, New York City, of counsel), for defendant-appellee.

Before KEARSE, PIERCE and SWYGERT,* Circuit Judges.

PIERCE, Circuit Judge:

Appeal from a judgment of the United States District Court for the Southern District of New York, Vincent L. Broderick, *Judge*, entered February 10, 1984, granting summary judgment on behalf of the City of New York ("the City") and dismissing the complaint. Plaintiffs alleged in their complaint that certain zoning changes adopted by the City deprived them of a "reasonable return" on their investments in several properties and, therefore, amounted to a taking without just compensation in violation of the United States Constitution. We agree with the district court that plaintiffs' claims are untenable as a matter of law and that there does not exist a dispute about material facts making summary judgment inappropriate. Consequently, we affirm the district court's judgment dismissing the complaint.

## I. BACKGROUND

Appellants Park Avenue Tower Associates and 40 Eastco (respectively "Park Avenue Tower" and "Eastco"), owners of certain real estate in Manhattan, commenced this action on September 10, 1982, seeking declaratory and injunctive relief against the City on the ground that particular zon-

---

* Senior Circuit Judge of the United States Court of Appeals for the Seventh Circuit, sitting by  designation.

ing changes adopted by the City served to deprive them of property without just compensation in violation of the Fifth and Fourteenth Amendments. Appellants also advanced several state constitutional and statutory claims.

Park Avenue Tower acquired one of the subject properties (a parcel of land consisting of several lots located on the square block bordered by East 55th Street, East 56th Street, Park Avenue, and Madison Avenue in Manhattan) between January, 1981, and March, 1982, at a total cost of approximately fifty-one million dollars. The other property involved herein is owned by Eastco and consists of several lots located between East 51st and 52nd Streets, and Park and Madison Avenues. Eastco acquired this property between March, 1978, and June, 1982, at a total cost of approximately sixteen and one-half million dollars.

The zoning regulations in effect at the time appellants began purchasing the subject properties allowed the construction of buildings with a maximum floor area ratio ("FAR") of eighteen. FAR is the measure of the bulk of a building; the higher the FAR, the greater the rentable space that can be constructed on a given parcel of property.

According to the complaint, appellants acquired the properties intending to demolish the existing structures and to construct office buildings with the maximum eighteen FAR then allowed under the zoning provisions. Toward that end, they applied to the City for building permits, which the City issued between June, 1981, and May, 1982.

Several years before the permits were issued, City officials had become concerned that the quality of life in New York was threatened by the rapid rate and nature of construction taking place in the eastside, midtown area of Manhattan. *See* New York City Department of Planning, *Midtown Development*, at 11–12 (1981). In this connection, the New York City Planning Commission, the agency of the City responsible for proposing and promulgating amendments to the zoning regulations, issued for public comment a draft report in June, 1980, proposing the creation of a Special Midtown District composed of stabilization, growth, and preservation areas. The stabilization area, which included appellants' properties, was designed to relieve pedestrian congestion and pressure upon inadequate transportation and other public facilities. The planners felt that overbuilding was causing these conditions. *Id.*

A major aspect of the proposed plan involved limiting the maximum bulk of new buildings constructed within the stabilization area. The bulk-restriction proposals, along with other aspects of the proposed amendments, were subject to extensive public comment and review between the time they first were proposed in public in June, 1980, and May, 1982, when they first were proposed in public by the City Board of Estimate. *See* New York Planning Commission, *Midtown Zoning* (1982).

As adopted, the zoning amendments lowered the maximum FAR within the stabilization area from eighteen to thirteen. In view of the new bulk restrictions, the City revoked appellants' building permits (prior to construction), since those permits were premised on a maximum permissible FAR of eighteen.

The gravamen of appellants' September 10, 1982 complaint was that the zoning change limiting the bulk of new buildings constituted an unconstitutional taking because it precluded appellants from constructing buildings that would provide "a reasonable return" on their investment. The complaint also alleged that the zoning changes "destroyed [the properties'] economic value."

On October 6, 1982, the City moved pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss the complaint for failure to state a claim upon which relief could be granted. In its moving papers, the City argued that a zoning change which precluded appellants from receiving a reasonable return on their prior investment did not, by itself, amount to an unconstitutional taking. As to the contention that the new limitations on bulk "destroyed [the properties'] economic value,"

the City submitted an affidavit by Lauren F. Otis, a registered architect who served as deputy director of the Manhattan Office of the City Planning Department and who was a major participant in the Midtown Development Project that produced the disputed zoning changes, stating that Park Avenue Tower would be able to construct a new thirty-one story office building on its parcel under the new zoning restrictions while retaining the existing small buildings. Otis also stated that Eastco could construct a building of at least thirty stories on its parcel. Finally, the architect asserted that "[t]he above-described buildings are characteristic of modern Midtown office buildings, with total floor area and floor sizes falling within the range established by Midtown office buildings under construction or recently completed." In response, appellants filed a memorandum of law in opposition to the City's motion. They did not, however, present any affidavits based on personal knowledge or other evidence to refute the architect's affidavit.

Judge Broderick heard oral argument on the City's motion to dismiss on January 7, 1983. Over one year later, on February 7, 1984, the district judge converted the City's motion to dismiss to a motion for summary judgment. After considering the affidavits submitted by the City in support of the motion, Judge Broderick ruled that appellants' inability to earn a reasonable return on their investments did not amount to an unconstitutional taking. In addition, referring to the Otis affidavit submitted by the City, he ruled that it was factually undisputed that the zoning changes would not "prevent either plaintiff from constructing a very substantial building on its property." Having dismissed appellants' federal claim, the district court went on to dismiss the pendent state claims. Appellants do not challenge the dismissal of the pendent claims independently of their challenge to the dismissal of their constitutional claims.

On appeal, appellants make essentially two arguments. First, they renew their contention that a zoning change which prevents a reasonable return on an investment constitutes an unconstitutional taking of property. Second, they argue that even if the above proposition is incorrect, it nevertheless was improper for the district court to grant summary judgment here because there existed a substantial dispute about material facts. Because we hold (1) that the inability of appellants to receive a reasonable return on their investment by itself does not, as a matter of law, amount to an unconstitutional taking, and (2) that there is not a factual dispute that appellants' properties retained their economic viability, we affirm the judgment of the district court.

## II. DISCUSSION

In *Agins v. Tiburon*, 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980), the Supreme Court stated that the "application of a general zoning law to particular property effects a taking if the ordinance does not substantially advance legitimate state interests ... or denies an owner economically viable use of his land." *Id.* at 260, 100 S.Ct. at 2141 (citations omitted). Appellants do not dispute that the zoning changes herein advance legitimate state interests. Instead, they base their claim on the second factor of the *Agins* formula—economic viability. They argue that economic viability is not, and indeed cannot be, satisfied where a zoning change prevents investors from receiving a reasonable return on their investments.

We do not find merit in this contention. Neither of the two cases upon which appellants rely, *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922), and *Penn Central Transportation Co. v. New York*, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978), holds that a taking occurs where a zoning change prevents an investor from receiving a reasonable return on its investment.[1] More-

---

1. At issue in *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922), was a state statute preventing plaintiff coal companies, which owned rights to mine coal under certain homes, from conducting mining activities that could cause the homes to subside. Jus-

over, as the Supreme Court observed recently, "deprivation of the right to use and obtain a profit from property is not, in every case, independently sufficient to establish a taking." *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 436, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982). In support of this proposition, the Court cited *Andrus v. Allard*, 444 U.S. 51, 100 S.Ct. 318, 62 L.Ed.2d 210 (1979), a case which raised the issue whether a regulation that completely prohibited commercial traders of Indian artifacts from selling, trading, importing or exporting certain bird-part artifacts owned by the traders constituted a taking. In holding that the traders had not been subjected to an unconstitutional taking, the Court noted as follows:

> [L]oss of future profits—unaccompanied by any physical property restriction— provides a slender reed upon which to rest a takings claim. Prediction of profitability is essentially a matter of reasoned speculation that courts are not especially competent to perform. Further, perhaps because of its very uncertainty, the interest in anticipated gains has traditionally been viewed as less compelling than other property-related interests.

*Id.* at 66, 100 S.Ct. at 327.

More recently, this court rejected the notion that loss of profit—much less loss of a reasonable return—alone could constitute a taking. In *Sadowsky v. New York*, 732 F.2d 312 (2d Cir.1984), the court stated that "regarding economic impact, it is clear that prohibition of the most profitable or beneficial use of a property will not necessitate a finding that a taking has occurred." *Id.* at 317. The crucial inquiry, stated the court, is not whether the regulation permits plaintiffs to use the property in a "profitable" manner, but whether the property use allowed by the regulation is sufficiently desirable to permit property owners to "sell the property to someone for that use." *Id.* at 318. Similarly, in *Pompa Construction Corp. v. Saratoga Springs*, 706 F.2d 418 (2d Cir.1983), in which the *Agins* formulation expressly was applied, the court emphasized that "the key question" in determining whether a property restriction is so economically burdensome as to constitute a taking is not whether the regulation allows operation of the property as "a profitable enterprise" for the owners, but whether others "might be interested in purchasing all or part of the land" for permitted uses. *Id.* at 424.

Appellants' theory is undermined further by the legion of cases that have upheld regulations which severely diminished the value of commercial property. For example, in *Hadacheck v. Sebastian*, 239 U.S.

tice Holmes, writing for the Court, held that the statute amounted to an unconstitutional taking because it did "not disclose a public interest sufficient to warrant so extensive a destruction of the [coal companies'] constitutionally protected rights." *Id.* at 414, 43 S.Ct. at 159. As one comment has noted, *Pennsylvania Coal* stands "for the proposition that, where the ordinance is designed to protect merely private rights, the economic harm of the regulation will likely weigh heavily in the court's balancing of the factors." Comment, 48 Brooklyn L.Rev. 137, 164–65 (1981) (footnote omitted). Nowhere does *Pennsylvania Coal* hold, as appellants' contend, that the inability of an investor to receive a "reasonable return" on its investment as a result of a regulatory restriction amounts to an unconstitutional taking.

The Supreme Court's decision in *Penn Central Transp. Corp. v. New York*, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978), similarly is not supportive of appellants' position. Contrary to appellants' assertion, the Court in *Penn Central* did not hold that "a reasonable return on investments" was a factor—much less the *only* factor—in determining whether a taking had occurred. Rather, at issue in *Penn Central* was a state law (not a zoning provision) that assured owners affected by the restrictions a reasonable return on their investments. The New York Court of Appeals, from which the plaintiffs in *Penn Central* had appealed, had found that the plaintiffs could receive a reasonable return despite the statutory restrictions on their property. In reviewing the case, the Supreme Court accepted the state court's finding of fact as to reasonable return. Because a reasonable return was assured, reasoned the Court, a taking certainly had not occurred. We do not interpret that holding as stating a principle, as appellants contend, that a taking occurs where there is interference with a reasonable return. In short, neither *Pennsylvania Coal* nor *Penn Central* requires the approach urged upon us by appellants.

394, 405, 36 S.Ct. 143, 144, 60 L.Ed. 348 (1915), the Supreme Court upheld a restriction that devalued property by approximately ninety percent. Similarly, in the seminal zoning case, *Euclid v. Ambler Realty Corp.*, 272 U.S. 365, 384, 47 S.Ct. 114, 117, 71 L.Ed. 303 (1926), the Court sustained a zoning regulation enacted after plaintiff acquired the property, even though the restriction reduced the value of the property by seventy-five percent. In *Pompa*, 706 F.2d at 420 n. 2, 424, we held that a taking had not occurred, even if we accepted the assertion that a use restriction devalued property by approximately seventy-seven percent. Herein, appellants did not allege that their properties had suffered a reduction in value in any way comparable to the reductions in *Hadacheck, Euclid* or *Pompa.*

■ Significantly, appellants have stated their claims in terms of *return on investment* rather than *reduction in the value* of the properties. This recharacterization of a taking claim, however, does not distinguish appellants' claims from the above-cited cases. As the district judge noted, the suggestion that the City may not cause the loss of a reasonable return is merely another way of arguing that it may not impair the value of the property. *Accord Haas v. San Francisco*, 605 F.2d 1117, 1120–21 (9th Cir.1979) ("Haas' argument that it cannot recover its ... investment by constructing low-rise apartment units on the land merely restates the undisputed fact that the value of the property in Haas' hands has been significantly diminished by the regulations .... Haas [cannot] transform a regulation into a taking by recharacterizing the diminution of the value of its property as an inability to obtain a favorable return on its investment."), *cert. denied,* 445 U.S. 928, 100 S.Ct. 1315, 63 L.Ed.2d 761 (1980).

In addition to being inconsistent with the case law, appellants' approach could lead to unfair results. For example, a focus on

reasonable return would distinguish between property owners on the basis of the amount of their investments in similar properties (assuming an equal restriction upon the properties under the regulations), favoring those who paid more over those who paid less for the investments.[2] Moreover, in certain circumstances, appellants' theory "would merely encourage property owners to transfer their property each time its value rose, in order to secure [in the event of a future, limiting zoning change] that appreciation which could otherwise be taken by the government without compensation." *The Supreme Court, 1977 Term,* 92 Harv.L.Rev. 1, 231 (1978). Finally, if courts focused upon preregulation value (as would be required under the reasonable return on investment method), most regulations "would constitute a taking, for the land value would reflect expected returns from the unregulated use." *Id.; see* Berger, *The Accommodation Power in Land Use Controversies: A Reply to Professor Costonis,* 76 Colum.L.Rev. 799, 818–19 (1976). In short, neither the case law nor common sense supports the reasonable return definition of economic viability urged upon us by appellants.

Alternatively, appellants argue that even if we reject their theory on the law of takings, we should reverse the district court because there exists a dispute about material facts, making summary judgment inappropriate. Upon reviewing the record, however, we conclude that this contention also is without merit. In their complaint, appellants did not allege any material facts as to a taking other than the allegations that the zoning changes prevented them from receiving a reasonable return on their investment and served to destroy the economic value of the properties nor did appellants assert anywhere in their complaint that the zoning changes precluded them from realizing any profit whatsoever from the properties.

---

2. For example, assume that two investors purchased identical properties at the same time for identical development purposes, but one investor, more shrewd than the other, paid considerably less for the property. Under appellants' theory of takings, the City would have to com-

pensate the investor who paid more but not necessarily the one who paid less, since the percentage "return" received by each would turn on the amount of their respective investments.

In contrast, the City responded with the affidavit, made on personal knowledge, of Lauren F. Otis, an architect who was familiar with the zoning changes,[3] and who stated that Park Avenue Tower could construct on its parcel a new thirty-one story building while retaining the existing small buildings. As to Eastco, the affiant asserted that it could construct a building of at least thirty stories on its parcel of land. Otis further stated that the thirty-story buildings were within the size and range of mid-town office buildings that recently had been completed or upon which construction recently had begun. Finally, the affidavit asserted that the above information refuted appellants' contention that the zoning changes had "rendered such Parcels unsuitable for any reasonable income productive or private use for which they are adapted and, thus, has destroyed their economic value." Instead of submitting affidavits of their own to challenge the Otis affidavit, appellants chose to rely solely on their pleadings and on a memorandum of law. This was insufficient to create a factual dispute about the economic viability of the property. *See, e.g., First National Bank v. Cities Service Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968) ("Rule 56(e) ... make[s] clear ... that a party cannot rest on the allegations contained in his complaint in opposition to a properly supported summary judgment motion made against him."); *Wyler v. United States,* 725 F.2d 156, 160 (2d Cir.1983) ("Upon a defendant's motion for summary judgment supported by proof of facts entitling the movant to dismissal the plaintiff is required under Rule 56(e) to set forth specific facts showing that there is a general issue of material fact for trial or face dismissal."); *United States v. Pent-R-Books, Inc.,* 538 F.2d 519, 529 (2d Cir.1976) ("If ... the moving party does carry its preliminary burden, then, the opposing party may not defeat the motion by relying on the contentions of its pleading."), *cert. de-*

*nied,* 430 U.S. 906, 97 S.Ct. 1175, 51 L.Ed.2d 582 (1977). Consequently, the district court herein did not err in granting summary judgment on the City's behalf.

We have considered appellants' other contentions and we conclude that they also are without merit.

### III. CONCLUSION

For the foregoing reasons, we affirm the district court's judgment granting the City summary judgment and dismissing the complaint.

---

**3.** Otis has both A.B. and Masters degrees in Architecture and worked for several major architectural firms for over twelve years before joining the Urban Design Group of the Department of City Planning in 1967. The affidavit stated that "[i]n order to determine the use to which Plaintiffs could now put their properties," Otis had "performed a zoning analysis indicating the general size and configuration of office buildings that could be built on these properties" pursuant to the new zoning provisions.