RENT STABILIZATION ASSOCIATION
OF NEW YORK CITY, INC., on behalf
of its members, Plaintiff,

v.

David N. DINKINS, as Mayor of the City
of New York; the City of New York;
the New York City Rent Guidelines
Board; Aston L. Glaves, as Chairman
of the Rent Guidelines Board; Joseph
L. Forstadt, Oda Friedheim, Ellen Ges-
mer, Galen Kirkland, Harold Lubell,
Victor Marrero, Agustin River, and
Janice Robinson, as members of the
Rent Guidelines Board; Angelo Aponte,
as Commissioner of the New York
State Division of Housing and Commu-
nity Renewal; and Elliot Sander, as
Deputy Commissioner for Rent Admin-
istration of the New York State Divi-
sion of Housing and Community Re-
newal, Defendants.

No. 91 Civ. 4386 (LLS).

United States District Court,
S.D. New York.

Oct. 8, 1992.

Thelen, Marrin, Johnson & Bridges, New York City (Jonathan E. Polonsky, of counsel), for plaintiff.

Atty. Gen., New York State Dept. of Law, New York City (Dennis J. Saffran, of counsel), for defendants Angelo Aponte and Elliot Sander.

Corp. Counsel, City of New York Law Dept., New York City (Julian Bazel, of counsel), for New York City defendants.

## OPINION AND ORDER

STANTON, District Judge.

Defendants move to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted.

Plaintiff Rent Stabilization Association brings this action on behalf of its members to challenge certain provisions of the New York City Rent Stabilization Law, and the rent stabilization regulations of the New York State Division of Housing and Community Renewal, as an unconstitutional taking[1] and denial of due process[2] in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

**1.** The Fifth Amendment to the United States Constitution provides "... nor shall private property be taken for public use, without just compensation."

**2.** The Fourteenth Amendment provides "... nor shall any State deprive any person of life, liberty, or property, without due process of law...."

**3.** The New York City Rent and Rehabilitation Law (Loc.L.1962, No. 20) is commonly known as "the rent control law."

## BACKGROUND

### I. The Statutes and Regulations

In 1969, citing "a serious public emergency" in housing, the City of New York enacted the Rent Stabilization Law (the "RSL") to supplement its existing regime of rent control.[3] In 1983 the administration of the RSL was transferred from the city to the New York State Division of Housing and Community Renewal (the "DHCR"), and the RSL has been codified under the DHCR's Rent Stabilization Code (the "RSC").[4]

With some exceptions, the RSL applies to apartments in buildings of six or more units which are not subject to rent control. RSL §§ 26-504 to 26-507. Under the RSL the Mayor of New York appoints a nine member board[5] which establishes mandatory annual rent increase guidelines. In reaching its determination, the board considers the following factors under RSL § 26-510(b):

(1) the economic condition of the residential real estate industry in the affected area including such factors as the prevailing and projected (i) real estate taxes and sewer and water rates, (ii) gross operating maintenance costs (including insurance rates, governmental fees, cost of fuel and labor costs), (iii) costs and availability of financing (including effective rates of interest), (iv) over-all supply of housing accommodations and overall vacancy rates, (2) relevant data from the current and projected cost of living indices for the affected area, [and] (3) such other data as may be available to it.

The RSL provides two procedures which permit individual owners to obtain rent increases beyond the board's established

**4.** The RSL is codified as Chapter 4 of Title 26 of the Administrative Code of the City of New York, §§ 26-501 to 26-520 and under the Rent Stabilization Code, promulgated and adopted by the New York State Division of Housing and Community Renewal and codified at N.Y.Comp. Codes R. & Regs Title 9 §§ 2520 to 2530.

**5.** The board consists of two landlord representatives, two tenant representatives and five members of the public.

rates: "comparative" and "alternative" hardship rent increases, which are available with the qualifications that 1) the landlord must have owned the property for at least three years; 2) the building's income must fall below a specified level;[6] 3) the increase cannot exceed 6% in any year; and 4) an order adjusting rent cannot be issued more than once every three years. RSL § 26–511(c)(6) and (c)(6–a).

## II. Questions Presented

Plaintiff Rent Stabilization Association, Inc. ("RSA") is a not-for-profit corporation which represents over 25,000 landlords in New York City. It conducts investigations, participates in hearings and prosecutes litigation on behalf of owners of rent stabilized apartments (Complaint ¶ 4). RSA brings this suit on behalf of its members.

In its first claim for relief plaintiff alleges that the RSL effects a taking, both "on its face" and "as applied,"[7] by depriving owners of rent-stabilized property of the opportunity to obtain a just and reasonable return on their property (Complaint ¶¶ 23–84). Plaintiff particularly challenges the board's disregard of the effect of inflation on owners' revenue (*Id.* ¶¶ 29–36), and contends that the hardship provisions are "incapable of correcting the confiscatory effects of the board guidelines" since they also ignore inflation and are limited measures beset by delay and expense (*Id.* ¶¶ 37–84).

In its second claim for relief plaintiff challenges the hardship provisions on the basis that their administration deprives plaintiff's members of property without due process of law (*Id.* ¶¶ 85–89).

Plaintiff seeks to enjoin the enforcement and administration of the RSL unless adequate provisions are made either to compensate the owners or to correct the inequities of the system; to enjoin the board from establishing maximum rent increases that do not provide owners with a just and reasonable return; and to order the state defendants to review hardship applications without delay and with a full and fair opportunity for owners to be heard.

## DISCUSSION

### I. The Standard for Dismissal

In considering a 12(b)(6) motion to dismiss,[8] the allegations in the complaint must be taken as true. "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1973). *Accord, Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) ("[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.")

### II. Takings Claim

#### A. Facial Challenge

Counts I.C., I.D., and I.F. challenge the facial validity of the RSL on the grounds

---

**6.** A comparative hardship increase is available to those owners whose annual income over the past three years does not equal the average net income for the period from 1968 through 1970, or the first three years of operation if the building was completed after 1968. Comparative hardship increases are limited to those who are earning less than 8.5% of the their equity in the property. RSL § 26–511(c)(6).

An alternative hardship increase is available to owners who hold at least a five percent equity position in their property and whose annual operating expenses exceed 95 percent of their annual gross rental income. RSL § 26–511(c)(6–a).

**7.** These terms are significant for constitutional analysis. A challenge that a statute is unconstitutional on its face means that its own text, when laid alongside the Constitution, reveals its invalidity. A challenge to a statute "as applied," however, involves the statute's impact on a specific case. A statute which is not unconstitutional on its face may be invalid as applied to particular situations, because it impairs constitutional rights in those cases.

**8.** Plaintiff consents to a voluntary dismissal of count I.A. (Complaint ¶¶ 26–28) which alleges that the RSL lacks adequate standards on its face to ensure a just and reasonable return (Plaintiff Memorandum at 93–96).

that it effects a taking. Plaintiff argues that to state a claim it need only allege that the statute cannot be validly applied to "one or more" landlords (Plaintiff Memorandum at 71). Defendants counter that to be facially invalid the laws and regulations must be deficient as to "all" owners of rent stabilized apartments (City Memorandum at 23, 32; State Memorandum at 29).

 A facial challenge to a legislative act "is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the act would be valid." *General Elec. v. New York State Dept. of Labor*, 936 F.2d 1448, 1456 (2d Cir.1991), quoting *United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095, 2100, 95 L.Ed.2d 697 (1987). As the Supreme Court stated in *Salerno*, the fact that legislation "might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid since we have not recognized an 'overbreadth' doctrine outside the limited context of the First Amendment." *Salerno*, 481 U.S. at 745, 107 S.Ct. at 2100. *See also, California Coastal Comm'n v. Granite Rock Co.*, 480 U.S. 572, 580, 107 S.Ct. 1419, 1424, 94 L.Ed.2d 577 (1987) (party making facial challenge required to demonstrate "no possible set of conditions" in which regulation is valid); *Witzke v. Withrow*, 702 F.Supp. 1338, 1355 (W.D.Mich. 1988) (statute facially constitutional because valid in many circumstances); *Fisher v. City of Berkeley*, 37 Cal.3d 644, 683, 209 Cal.Rptr. 682, 714, 693 P.2d 261, 293 (1984) ("we will invalidate an ordinance on its face only if its terms preclude avoidance of confiscatory results"), *aff'd*, 475 U.S. 260, 106 S.Ct. 1045, 89 L.Ed.2d 206 (1986).

In its facial challenge, plaintiff does not claim that the RSL is invalid under all circumstances. Rather, plaintiff claims that the law violates the constitutional rights of "many" of its members (Complaint ¶¶ 24–25, 37, 42). Assuming the RSL is unconstitutional as to "many" owners, but not as to others, the proper recourse is

for the aggrieved individuals themselves to bring suit.

By their nature, challenges to statutes as being "takings" tend to involve factual determinations concerning specific properties rather than the text of the statute on its face. The Supreme Court stated in *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 495, 107 S.Ct. 1232, 1247, 94 L.Ed.2d 472 (1987) (describing this kind of facial challenge as an "uphill battle"):

> [T]his Court has generally been unable to develop any set formula for determining when justice and fairness require that economic injuries caused by public action be compensated by the government, rather than remain disproportionately concentrated on a few persons. Rather, it has examined the taking question by engaging in essentially ad hoc, factual inquiries.... Because appellees' taking claim arose in the context of a facial challenge ... the only issue properly before the District Court and, in turn, this Court, is whether the mere enactment of the Surface Mining Act constitutes a taking. The test to be applied in considering this facial challenge is fairly straightforward. A statute regulating the uses that can be made of property effects a taking if it 'denies an owner economically viable use of his land....'

*Keystone*, 480 U.S. 470, 495, 107 S.Ct. 1232, 1247 (1987), quoting *Agins v. Tiburon*, 447 U.S. 255, 260, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106 (1980) and *Kaiser Aetna v. United States*, 444 U.S. 164, 175, 100 S.Ct. 383, 390, 62 L.Ed.2d 332 (1979) (citations omitted).

 A regulatory taking requiring compensation occurs when: (1) it does not substantially advance legitimate state interests, or (2) it denies an owner economically viable use of his land. *Nollan v. California Coastal Comm'n*, 483 U.S. 825, 834, 107 S.Ct. 3141, 3147, 97 L.Ed.2d 677 (1987); *Keystone*, 480 U.S. at 495, 107 S.Ct. at 1247; *Agins*, 447 U.S. at 260, 100 S.Ct. at 2141.[9]

---

9. Another factor in takings analysis, interference with reasonable investment-backed expec-

■ Plaintiff does not claim that the RSL fails to advance legitimate state interests substantially (Plaintiff Memorandum at 43). Plaintiff asserts, however, that to withstand a facial challenge, the RSL must guarantee a "just and reasonable return" on the owners' property (Complaint ¶¶ 26–28, 37–55). There is some case law, much of it from California and New Jersey state courts, which applies such a standard (Plaintiff Memorandum at 25–30). *See e.g.*, *Cromwell Assoc's v. Mayor of Newark*, 211 N.J.Super. 462, 466–67, 511 A.2d 1273, 1275 (1985) ("The facial validity of a rent-control ordinance depends upon whether the regulatory scheme, in its entirety, permits an efficient landlord to receive a just and reasonable return on its investment."), quoted in *Richardson v. City of Honolulu*, 759 F.Supp. 1477, 1489 (D.Haw.1991).

However, the Second Circuit does not consider the denial of a "reasonable return" as necessarily preventing an owner's economically viable use of his land. In *Park Avenue Tower Assoc's v. City of New York*, 746 F.2d 135, 140 (2d Cir.1984), *cert. denied*, 470 U.S. 1087, 105 S.Ct. 1854, 85 L.Ed.2d 151 (1985), the court defined the standard as whether the owner was precluded "from realizing any profit whatsoever." A "reasonable return" is not protected by law in this circuit:

> [T]his court rejected the notion that loss of profit—much less loss of a reasonable return—alone could constitute a taking. In *Sadowsky v. New York*, the court stated that 'regarding economic impact, it is clear that prohibition of the most profitable or beneficial use of a property will not necessitate a finding that a taking has occurred.' The crucial inquiry, stated the court, is not whether the regulation permits plaintiffs to use the property in a 'profitable' manner, but whether the property use allowed by the regulation is sufficiently desirable to permit property owners to sell the property to someone for that use.

*Park Avenue Tower* at 139 (citations omitted). *See also, Sadowsky v. City of New York*, 732 F.2d 312, 317–18 & n. 3 (2d Cir.1984) ("unmarketability" equated with no economically viable use); *Dean Tarry Corp. v. Friedlander*, 650 F.Supp. 1544, 1550 (S.D.N.Y.1987) ("landowner must demonstrate that he has been deprived of all reasonable uses of his land"), *aff'd*, 826 F.2d 210 (2d Cir.1987); *Gibbs v. Southeastern Inv. Corp.*, 705 F.Supp. 738, 744 (D.Conn.1989) (denial of economically viable use "requires virtually a total denial of economic return").

Plaintiff argues that *Park Avenue Tower* and its progeny are distinguishable because they concern zoning and land use, but not rent regulation (Plaintiff Memorandum at 39). No authority in the Second Circuit supports such a distinction. In *Gibbs*, for example, the issue was neither zoning nor land use, but the limitation of an owner's right to evict residents from a mobile home park. *Gibbs*, 705 F.Supp. at 741. There is no principled reason to apply a different standard to rent regulation. In *Park Avenue Tower*, the court explained that a reasonable return standard would be so broad that if adopted, "most regulations would constitute a taking." *Park Avenue Tower*, 746 F.2d at 140. In addition, the court explained that such a standard would be "unfair" because it would favor those who paid more over those who paid less for their investments. This reasoning applies equally in the context of rent regulation as "neither the case law nor common sense supports the reasonable return definition of economic viability." *Ibid.*

Because plaintiff does not claim that the provisions of the RSL cannot be administered without confiscatory results, its challenge to the RSL as invalid on its face cannot succeed. Accordingly, counts I.C., I.D. and I.F. are dismissed.

### B. "As Applied" Challenge

Counts I.B., I.E. and I.G. assert that as applied to plaintiff's members the RSL effects a taking (Complaint ¶¶ 29–36, 49–53, 56–83). Defendants argue that RSA lacks

tations, does not apply here. That factor is "relevant to a challenge to the regulation as applied to particular owners, not a facial challenge." *Seawall Assoc's v. City of New York*, 74 N.Y.2d 92, 107 n. 6, 544 N.Y.S.2d 542, 549 n. 6, 542 N.E.2d 1059, 1066 n. 6 (1989).

standing to bring these claims (State Memorandum at 11–16; State Reply Memorandum at 19–21).

■ "[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted, nor the relief requested, requires the participation of individual members in the lawsuit." *International Union, United Auto., Aerospace and Agric. Implement Workers v. Brock*, 477 U.S. 274, 282, 106 S.Ct. 2523, 2529, 91 L.Ed.2d 228 (1986), citing *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977).

Defendants concede the first two factors, but assert that this suit requires the individual participation of RSA members (State Memorandum at 13). RSA urges that associational standing should be accorded because it seeks an injunction rather than damages (Plaintiff Memorandum at 44). *See Warth v. Seldin*, 422 U.S. 490, 515, 95 S.Ct. 2197, 2213, 45 L.Ed.2d 343 (1975) ("whether an association has standing to invoke the court's remedial powers on behalf of its members depends in substantial measure on the nature of the relief sought").

The question of associational standing does not turn exclusively on the relief sought. *See American Baptist Churches v. Meese*, 712 F.Supp. 756, 765–66 (N.D.Cal. 1989):

> Plaintiffs maintain that *Warth* and *Hunt* stand for the proposition that, where equitable relief is sought, group representation is always appropriate. This overstates the lesson of these decisions, however. The central inquiry is whether asserting the claim requires individual participation in establishing the proof. *Warth* and *Hunt* correctly note that, where injunctive relief is sought, individualized proof is ordinarily unnecessary.

*See also, International Union*, 477 U.S. at 287, 106 S.Ct. at 2531 (1986) (associational standing permitted when neither claims nor relief require District Court to consider individual circumstances); *Terre Du Lac Ass'n, Inc. v. Terre Du Lac, Inc.*, 772 F.2d 467, 471 (8th Cir.1985) (need for individualized proof "so pervades" the suit that associational standing denied), *cert. denied*, 475 U.S. 1082, 106 S.Ct. 1460, 89 L.Ed.2d 718 (1986); *Parks v. Internal Revenue Service*, 618 F.2d 677, 685 (10th Cir.1980) (associational standing denied where injury and damages "are not common to nor shared by all").

An "as applied" claim of taking is a poor candidate for associational standing. "Given the 'essentially ad hoc, factual inquiry' involved in the takings analysis, we have found it particularly important in takings cases to adhere to our admonition that 'the constitutionality of statutes ought not to be decided except in an actual factual setting.'" *Pennell v. City of San Jose*, 485 U.S. 1, 10, 108 S.Ct. 849, 856, 99 L.Ed.2d 1 (1988), quoting *Kaiser Aetna v. United States*, 444 U.S. 164, 175, 100 S.Ct. 383, 390, 62 L.Ed.2d 332 (1979) and *Hodel v. Virginia Surface Mining & Reclamation Ass'n, Inc.*, 452 U.S. 264, 294–95, 101 S.Ct. 2352, 2369–70, 69 L.Ed.2d 1 (1981). Whether a given government action constitutes a taking is a difficult, fact-specific inquiry. *See Williamson County Regional Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 190–91, 105 S.Ct. 3108, 3118–19, 87 L.Ed.2d 126 (1985), quoting *Penn Central Transportation Company v. City of New York*, 438 U.S. 104, 123–24, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631 (1978):

> Although '[t]he question of what constitutes a 'taking' for purposes of the Fifth Amendment has proven to be a problem of considerable difficulty,' this Court consistently has indicated that among the factors of particular significance in the inquiry are the economic impact of the challenged action and the extent to which it interferes with reasonable investment-backed expectations.

(citations omitted).

■ RSA's challenge to the RSL as applied to various cases requires individual participation by its members. The economic impact of the RSL and its interference with reasonable investment-backed expectations will vary from owner to owner.

The circumstances concerning specific properties, such as levels of investment and income, will be directly material. Plaintiff's argument that proof of the RSL's impact could be obtained through "statistical evidence," discovery, and "the individual experiences of some RSA members" is to no avail (Plaintiff Memorandum at 50). Even without the need for actual testimony from its members, RSA lacks standing. *See Terre Du Lac Ass'n, Inc. v. Terre Du Lac, Inc.*, 772 F.2d at 471:

> The Association's argument boils down to the proposition that the rule against granting associational standing where the 'participation of individual members' is required in the lawsuit refers solely to participation in the form of in-court testimony. Such a narrow reading of *Hunt* is unfounded. Associational standing is properly denied where, as here, the need for 'individualized proof' so pervades the claims asserted that the furtherance of the members' interests requires individual representation.

(citations omitted).

The individual owners, urging their particular and specific cases, are better fitted than the association to challenge the RSL as it applies to them. Mr. Justice Powell stated in *Warth v. Seldin*, 422 U.S. at 499, 95 S.Ct. at 2205, that "this Court has held that the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." He continued:

> Without such limitations—closely related to Art. III concerns but essentially matters of judicial self-governance—the courts would be called upon to decide abstract questions of wide public significance even though other governmental institutions may be more competent to address the questions and even though judicial intervention may be unnecessary to protect individual rights.

> Although standing in no way depends on the merits of the plaintiff's contention that particular conduct is illegal, it often turns on the nature and source of the claim asserted. The actual or threatened injury required by Art. III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing....' Moreover, the source of the plaintiff's claim to relief assumes critical importance with respect to the prudential rules of standing that, apart from Art. III's minimum requirements, serve to limit the role of the courts in resolving public disputes.

*Warth*, 422 U.S. at 500, 95 S.Ct. at 2205–06 (citations omitted).

Here, the "source of the claim" lies primarily in the application of the rent stabilization process to some, but less than all, of RSA's members. Individually represented, each interested member would supply that intimacy with the facts, individual interest in the outcome, discrimination in balancing the costs and risks of litigation against the chance of recovery, and freedom to urge or waive a particular argument in his own interest rather than as part of the association's overall strategy, which assures the "concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." [10] *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962).

Accordingly, counts I.B., I.E., and I.G. of RSA's complaint are dismissed. Plaintiff lacks standing to challenge the RSL as applied to its individual members. Accordingly, there is no need to address defendants' contention that those takings claims are not ripe for adjudication (State Memorandum at 16–19; State Reply at 21–25).

### III. Due Process Claim

In the second claim for relief, RSA alleges that "defendants' administration of the hardship provisions" deprives its members of due process of law (Complaint ¶¶ 85–89). Plaintiff has no greater standing to challenge the "administration" of the hardship provisions under the due process clause than it has to challenge the RSL as effecting takings as it is being applied. Thus, it does not share in the injury it claims some of its members have suffered.

---

**10.** It is worth noting that RSA does not claim that any of its own property has been taken.

The same individualized proof necessary to determine whether there was a taking is essential in finding a violation of due process. *See Williamson County*, 473 U.S. at 199–200, 105 S.Ct. at 3123:

Viewing a regulation that 'goes too far' as an invalid exercise of the police power, rather than as a 'taking' for which just compensation must be paid, does not resolve the difficult problem of how to define 'too far'.... As we have noted, resolution of that question depends, in significant part, upon an analysis of the effect the Commission's application of the zoning ordinance and subdivision regulations had on the value of respondent's property and investment-backed profit expectations.

RSA, therefore lacks standing to bring its due process claim. Accordingly, claim II is dismissed.

## CONCLUSION

Defendants' motion to dismiss the complaint is granted.

So ordered.