RENT STABILIZATION ASSOCIATION OF the CITY OF NEW YORK, on behalf of its members, Plaintiff–Appellant,

v.

David N. DINKINS, as Mayor of the City of New York, City of New York, Aston L. Glaves, as Chairman of the Rent Guidelines Board, Joseph L. Forstadt, Oda Friedheim, Ellen Gesmer, Galen Kirkland, Harold Lubell, Victor Marrero, Agustin Rivera, and Janice Robinson, as members of the Rent Guidelines Board, Angelo Aponte, as Commissioner of the NYS Division of Housing & Community Renewal, and Elliot Sander, as Deputy Commissioner for Rent Administration of the NYS Division of Housing & Community Renewal, Defendants–Appellees.

No. 1259, Docket 92–9240.

United States Court of Appeals, Second Circuit.

Argued March 24, 1993.

Decided Sept. 1, 1993.

As Amended Oct. 21, 1993.

---

.Jonathan E. Polonsky, New York City (Thomas P. Higgins, Thelen, Marrin, Johnson & Bridges, Law Offices of Susan M. Standish, of counsel), for plaintiff-appellant.

Alan G. Krams, Asst. Corp. Counsel of the City of New York, New York City (O. Peter Sherwood, Corp. Counsel of the City of New York, Barry P. Schwartz, Julian Bazel, Asst. Corp. Counsels, City of New York, of counsel), for Municipal defendants-appellees.

Marilyn T. Trautfield, Asst. Atty. Gen., State of N.Y. New York City (Robert Abrams, Atty. Gen. of the State of N.Y., of counsel), for State defendants-appellees.

Before TIMBERS, MESKILL and PRATT, Circuit Judges.

MESKILL, Circuit Judge:

This is an appeal brought by appellant Rent Stabilization Association of the City of New York (RSA) from a judgment entered in the United States District Court for the Southern District of New York, Stanton, J., dismissing the action on the ground that the complaint fails to state a claim upon which relief may be granted. The RSA, on behalf of its members, seeks declaratory and injunctive relief from New York City's rent stabilization scheme contending that it violates the Takings Clause of the Fifth Amendment because it does not allow a landlord to earn a "just and reasonable return" on his property. The RSA also argues that the scheme violates the substantive component of the Due Process Clause.

We affirm the judgment of the district court because we believe that the RSA has asserted only "as applied" challenges to New York's rent stabilization scheme and that it lacks associational standing to raise those challenges.

## BACKGROUND

The RSA is a not-for-profit corporation, with a voluntary membership of over 25,000 owners of buildings located throughout New York City. These buildings contain roughly one million rent-stabilized apartments. The RSA provides various services for its members, including the prosecution of legal ac-

tions to preserve the rights of its members. The RSA brought this action on behalf of its members seeking relief from (1) the standards and exceptions in the hardship adjustment provisions of the Rent Stabilization Law and Code, and (2) the internal policies and guidelines for determining hardship applications. The RSA claims that these elements of the rent stabilization scheme violate the Takings Clause of the Fifth Amendment and that these internal policies and guidelines are arbitrary and irrational so as to deprive RSA members of substantive due process.

All rents for rent-stabilized apartments in New York City are subject to regulation under the New York City Rent Stabilization Law, City Admin.Code §§ 26–501 to 26–520, *reprinted in* N.Y.Unconsol.Laws after § 8617, at 531 (McKinney 1987) (Rent Law), and the Rent Stabilization Code, N.Y.Comp. Codes R. & Regs. tit. 9, § 2520 *et seq.*, *reprinted in* N.Y.Unconsol.Laws after § 8634, at 718 (McKinney 1987) (Rent Code). Pursuant to section 26–510 of the Rent Law, the Mayor of New York City appoints nine members to the Rent Guidelines Board (Board): two tenant representatives, two property owner representatives and five "public members each of whom shall have had at least five years experience in either finance, economics or housing." Rent Law § 26–510(a). The Board annually establishes mandatory limits on rent adjustments for dwellings subject to rent stabilization. However, the set rates may be modified for an individual landlord if that landlord is successful in his application for a hardship adjustment. The hardship provisions are intended to act as a safety valve, to relieve owners faced with extraordinary financial difficulty due to the rent levels set.

There are two types of hardship relief: comparative hardship and alternative hardship. Comparative hardship increases are governed by section 26–511(c)(6) of the Rent Law and section 2522.4(b) of the Rent Code. This type of increase is available if the building owner's average net annual income for

the past three years has been less than the building's average net annual income for the three year period spanning 1968 to 1970.[1] The increase is capped, however, such that the sum of (a) the increase, and (b) the building's net operating income in the current year does not exceed 8.5 percent of the equity in the property. Moreover, a landlord may collect only a six percent hardship increase annually.

Under section 26–511(c)(6–a) of the Rent Law and section 2522.4(c) of the Rent Code, an alternative hardship rent increase is available if the building's annual operating expenses exceed 95 percent of the annual gross rental income. The owner must have held title to the property for at least three years prior to an application for this type of increase. Moreover, it is not available to owners of buildings converted to cooperatives and condominiums, and three years must have passed since any prior hardship increase. As with the comparative hardship increase, this adjustment may not exceed six percent annually.

The district court granted the defendants' motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6). *Rent Stabilization Ass'n of New York City v. Dinkins*, 805 F.Supp. 159, 166 (S.D.N.Y.1992). The court found that the RSA's facial takings claims failed to assert the appropriate constitutional test and in any event failed to set forth a truly facial attack on the statute. *Id.* at 161–63. The court also found that the RSA lacked standing to assert its "as applied" claims with respect to both the takings and due process challenges. *Id.* at 163–66.

## DISCUSSION

### I. *Standard of Review*

We review *de novo* the district court's grant of a motion to dismiss for failure to state a claim. *Citibank, N.A. v. K–H Corp.*, 968 F.2d 1489, 1494 (2d Cir.1992). The facts alleged in the pleadings and documents either attached as exhibits or incorporated by

---

1. The exact criteria listed in the Rent Law and Rent Code are extremely detailed. We present here only a simplified version of the scheme they

establish and the basic features necessary to an understanding of the issues on appeal.

reference are considered, *Samuels v. Air Transport Local 504,* 992 F.2d 12, 15 (2d Cir.1993), and the complaint may not be dismissed unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957) (footnote omitted).

■ The standard of review of a dismissal for lack of standing is not quite as clear. Although we realize that dismissals for lack of standing may be made pursuant to Fed.R.Civ.P. 12(b)(6) rather than 12(b)(1),[2] like many cases under 12(b)(1) (but not under 12(b)(6)), it may become necessary for the district court to make findings of fact to determine whether a party has standing to sue. Thus, we must modify our standard of review of 12(b)(6) dismissals in the standing context. ·We adopt the standard used by several of our sister circuits to review dismissals under 12(b)(1): If the trial court dismissed on the basis of the complaint alone or the complaint supplemented by undisputed facts evidenced in the record, our standard is *de novo* review, but if the court also resolved disputed facts, we will accept the court's findings unless they are "clearly erroneous." *See Herbert v. Nat'l Academy of Sciences,* 974 F.2d 192, 197 (D.C.Cir.1992); *Ynclan v. Dep't of Air Force,* 943 F.2d 1388, 1390 (5th Cir.1991). In the present case, the district court did not need to resolve any

disputed facts, so we will review *de novo* everything in this appeal.

## II. *Takings Clause*

### A. *Character of the RSA's Challenges*

■ ·On appeal, the RSA contends that it has mounted three distinct facial attacks under the Takings Clause against the Rent Law. We do not agree. We believe that the RSA's complaint alleges only "as applied" objections to the law.[3]

The first "facial" challenge addresses allegations with respect to the comparative hardship provision, while the second such challenge addresses allegations regarding the alternative hardship provision. In these two challenges, the RSA alleges that certain landlords are never able to obtain an increase under the respective hardship provision. For instance, RSA alleges that owners of buildings that have been converted to cooperatives or condominiums are never eligible for alternative hardship increases. We are hard pressed to discover *any* constitutional argument in these allegations, however, facial or otherwise, because the RSA nowhere contends that some landlords who cannot obtain one type of hardship adjustment also cannot obtain the other. There is nothing unconstitutional in a statute that denies a landlord the benefits of one hardship provision but permits him to obtain a constitutionally adequate return on his investment under a second provision, even under the RSA's

---

**2.** District courts in this Circuit have dismissed for lack of standing under both Fed.R.Civ.P. 12(b)(1) (lack of subject matter jurisdiction) and 12(b)(6). *See, e.g., Thompson v. County of Franklin,* No. 92–CV–1258, 1992 WL 358703 at* 12 1992 U.S.Dist. LEXIS 18109, at *35 (N.D.N.Y. Nov. 30, 1992) (dismissing under 12(b)(6)); *Grimes v. Cavazos,* 786 F.Supp. 1184, 1188 (S.D.N.Y.1992) (dismissing under 12(b)(1)). However, standing and *subject matter* jurisdiction are separate questions. *See, e.g., Baker v. Carr,* 369 U.S. 186, 198–208, 82 S.Ct. 691, 699–05, 7 L.Ed.2d 663 (1962) (treating the two separately). While standing, which is·an issue of justiciability, *see Flast v. Cohen,* 392 U.S. 83, 98–99, 88 S.Ct. 1942, 1951–52, 20 L.Ed.2d 947 (1968), addresses the question whether a federal court may grant relief to a party in the *plaintiff's* position, subject matter jurisdiction addresses the question whether a federal court may grant relief to *any* plaintiff given the claim asserted. Thus, although both subject matter jurisdiction

and standing (as well as other questions of justiciability) act to limit the power of federal courts to entertain claims, that is, act to limit the courts' "jurisdiction" in the broadest sense of the term, the two must be treated distinctly.

**3.** The parties also disagree as to the appropriate test courts should apply to determine whether a taking has occurred in this context. While the RSA argues that a constitutional taking occurs when the government deprives a landlord of a "just and reasonable return," the appellees contend that a constitutional violation occurs only when the landlord is deprived of all "economically viable use" of his property. We leave the resolution of this dispute to another day because under either test, the RSA has failed to assert a facial challenge to the Rent Law and Rent Code, and, as discussed in section B, it has no standing to assert an "as applied" challenge.

takings theory. *See* footnote 3. In any event, as we explain below, these challenges are not "facial" in nature.

The RSA also complains that *both* hardship provisions "cause unnecessary and unreasonable delays" in mitigating confiscatory rents because no owner is eligible for any hardship increase unless (1) he has owned the building for more than three years, and (2) he has not received any hardship increase in the past three years.

The RSA's allegedly "facial" challenges seem to be aimed exclusively at the two hardship provisions. However, the hardship provisions, *standing alone*, obviously cannot effect a taking because they do not limit a landlord's rent in the first instance. Therefore, the RSA alleges in its complaint that "many" of its members are deprived of a constitutionally adequate return by the across-the-board limitations in the statute placed on annual rent increases. The RSA objects to the hardship provisions only because they are allegedly unable to remedy the confiscatory results of the basic provisions of the Rent Law and Rent Code.

Following the Supreme Court, we have stated that a facial challenge " 'must establish that *no set of circumstances* exists under which the [challenged a]ct would be valid.' " *General Elec. Co. v. New York State Dep't of Labor,* 936 F.2d 1448, 1456 (2d Cir.1991) (quoting *United States v. Salerno,* 481 U.S. 739, 745, 107 S.Ct. 2095, 2100, 95 L.Ed.2d 697 (1987)) (emphasis added); *see also Reno v. Flores,* — U.S. —, —, 113 S.Ct. 1439, 1446, 123 L.Ed.2d 1 (1993) (also quoting *Salerno* ); *California Coastal Comm'n v. Granite Rock Co.,* 480 U.S. 572, 593, 107 S.Ct. 1419, 1431, 94 L.Ed.2d 577 (1987) (facial preemption challenge to state permit requirement defeated by identifying "possible set of permit conditions not in conflict with federal law"). As the *Salerno* Court unambiguously put it, the "fact that the [legislation] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid, since we have not recognized an 'overbreadth' doctrine outside the limited context of the First Amendment." 481 U.S. at 745, 107 S.Ct. at 2100.

The RSA's challenges here basically assert that the Rent Law is overbroad, because while the law may apply constitutionally to certain landlords, it applies unconstitutionally to others. Accepting all of the RSA's allegations as true, at most, *"many "* of the RSA's members are victims of a taking. The RSA implicitly concedes, as it must, that the Rent Law has not abridged the constitutional rights of those landlords who *do* obtain an adequate return from the annual rent increases. Moreover, the RSA alleges that of the "many" landlords who do not obtain an adequate return, only certain subgroups are unable to secure constitutionally adequate relief under the hardship provisions. Thus, far from alleging that the Rent Law and Rent Code act unconstitutionally in every circumstance, the RSA asserts that takings occur in only limited subcategories of possible circumstances. The RSA's challenges are simply not facial, and in the words of the district court, "the proper recourse is for the aggrieved individuals themselves to bring suit." 805 F.Supp. at 162.

**B.** *Standing to Sue*

Because the challenges described above are not facial, we will treat them as "as applied." Moreover, we must consider the RSA's final challenge to the rent-stabilization scheme, a challenge that the RSA itself characterizes as "as applied." In this final challenge, the RSA contends that in administering the hardship process, the appellees have caused "unconscionable delays and extraordinary expense to property owners." In its complaint, the RSA alleges among other things that (1) upon information and belief, the complexity of the process can require $6,000 in accounting fees and 350 hours of professional time to bring a single hardship application to an initial determination; (2) the average processing time for an application in 1989 and 1990 was thirty months; (3) the appellees "have taken every possible measure to insure that owners would ultimately be unsuccessful in their applications;" and (4) many landowners who would be entitled to hardship increases do not apply for them because of these many disincentives. To infuse content into its allegations, the RSA describes the experiences of two prop-

erty owners, Midstate Management Corporation and Regent Leasing Company.

The district court held that the RSA lacked standing to bring these "as applied" challenges because they require the participation of individual members in the lawsuit. 805 F.Supp. at 164–65. The RSA contends that it seeks injunctive and declaratory relief rather than damages and therefore that it may bring this action on behalf of its members because the relief sought will inure to the benefit of all of the members without the necessity of proving individual damages.

■ "[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977). There is no dispute that the RSA meets the first two prongs of the test.

The RSA contends that it satisfies the third prong as well, because it seeks declaratory and injunctive relief and not damages. Citing *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), the RSA argues that whether an association satisfies the third prong of the test rests primarily on the type of relief sought on behalf of its members. The Court in *Warth* stated: "If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured." *Id.* at 515, 95 S.Ct. at 2213. However, the relief sought is only half of the story. The *Hunt* test is not satisfied unless "*neither the claim asserted* nor the relief requested requires the participation of individual members in the lawsuit." *Hunt,* 432 U.S. at 343, 97 S.Ct. at 2441 (emphasis added). Therefore, we also must examine the claims asserted to determine whether they require individual participation.

The RSA claims that some of its members have been the victims of a taking. But as the Supreme Court has stated, due to "the 'essentially ad hoc, factual inquir[y]' involved in the takings analysis, *Kaiser Aetna v. United States,* 444 U.S. 164, 175, 100 S.Ct. 383, 390, 62 L.Ed.2d 332 (1979), we have found it particularly important in takings cases to adhere to our admonition that 'the constitutionality of statutes ought not be decided except in an actual factual setting.'" *Pennell v. City of San Jose,* 485 U.S. 1, 10, 108 S.Ct. 849, 856, 99 L.Ed.2d 1 (1988) (alteration in original) (quoting *Hodel v. Virginia Surface Mining & Reclamation Ass'n,* 452 U.S. 264, 294–95, 101 S.Ct. 2352, 2369–70, 69 L.Ed.2d 1 (1981)). Whether we used the "just and reasonable return" standard or the "economically viable use" standard to determine when a taking has occurred, *see* footnote 3, we would have to engage in an *ad hoc* factual inquiry for *each* landlord who alleges that he has suffered a taking. We would have to determine the landlord's particular return based on a host of individualized financial data, and we would have to investigate the reasons for any failure to obtain an adequate return, because the Constitution certainly cannot be read to guarantee a profit to an inefficient or incompetent landlord. Finally, with respect to the RSA's charge that the law is administered unconstitutionally, we would have to examine the details of each particular instance of poor administration.

This case is easily distinguishable from cases in which associations do have standing to bring "as applied" challenges. In *Northeastern Fla. Chapter of the Associated General Contractors v. City of Jacksonville,* —— U.S. ——, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993), for instance, an association of contractors challenged as a violation of the Equal Protection Clause a Jacksonville ordinance requiring ten percent of the amount spent on city contracts to be set aside for Minority Business Enterprises (MBEs). The Court understood the association to argue that due to the ordinance some of its members were not permitted to compete for the contracts on an equal footing. *Id.* —— U.S. at ——, 113 S.Ct. at 2303–04. No question of associational standing was raised even though the chal-

lenge was both facial and "as applied."[4] *Id.* In *Jacksonville*, the Court easily could determine the identities of the aggrieved parties, that is, the non-MBEs who were members of the association. Whether these non-MBEs had been denied equal protection depended on a purely legal analysis of the ordinance and of the law of Equal Protection; it was factually indisputable that the non-MBEs could no longer compete equally with MBEs for city contracts. By contrast, in our case it is impossible to discern the identity of the aggrieved parties without delving into individual circumstances. Similarly, whether a taking has occurred depends not only on a legal interpretation of takings jurisprudence, but also on a variety of financial and other information unique to each landlord. *Cf. Kansas Health Care Ass'n v. Kansas Dep't of Social and Rehabilitation Servs.*, 958 F.2d 1018, 1022–23 (10th Cir.1992) (holding that although 42 U.S.C. § 1396 requires that regulated rates of health care providers be "reasonable and adequate," an association of nursing facilities did not have standing to sue because the determination of whether the set rates were reasonable and adequate would require the court "to examine evidence particular to individual providers").

We hold that the RSA lacks associational standing to assert its "as applied" takings claims and therefore affirm the judgment dismissing these claims.

### III. *Substantive Due Process*

The RSA also claims that the appellees' administration of the hardship provisions of the Rent Law and Rent Code deprives some of its members "of property, namely hardship rent increases, without due process of law." The district court, treating this challenge as "as applied," dismissed it for lack of standing. 805 F.Supp. at 165–66. On appeal, however, the RSA contends that the challenge is both facial and "as applied."

Once again we must disagree. Although the RSA characterizes the pertinent property

interest as a "hardship rent increase[ ]," this clearly cannot be the RSA's position. Every landlord cannot be constitutionally entitled to a hardship rent increase; at best, only landlords burdened by an appropriately severe hardship are so entitled. In other words, the real property interest at issue here is not the hardship rent increase *per se*, but rather the right to receive a constitutionally adequate return. The RSA's claim is really that the Rent Law and Rent Code deprive "many" landlords of their property interest in a constitutionally adequate return because the hardship process is administered arbitrarily. The RSA, citing *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 395, 47 S.Ct. 114, 121, 71 L.Ed. 303 (1926), claims that the Rent Law and Rent Code violate its members' substantive due process rights because this administration is clearly arbitrary and unreasonable and has no substantial relationship to the public health, safety, morals or the general welfare.

Stated this way, it is plain that the RSA has failed to assert a facial challenge. That "many" landlords arbitrarily may be deprived of a property interest is not to say that *all* landlords will be deprived similarly. Treating the due process challenge, then, as "as applied," we agree with the district court that the RSA lacks standing to bring the claim. The determination in a particular case that a landlord has been arbitrarily deprived of this property interest in a constitutionally adequate return will depend on the same individualized economic and financial data on which the takings analysis would depend. The district court aptly quoted from *Williamson County Regional Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), 805 F.Supp. at 166, and we repeat that quote here:

> Viewing a regulation that "goes too far" as an invalid exercise of the police power, rather than as a "taking" for which just compensation must be paid, does not re-

---

4. The Court stated that the respondent did not argue that the petitioner lacked associational standing and that the Court itself "given the current state of the record, [had no] basis for reaching that conclusion on [its] own." — U.S. at — n. 6, 113 S.Ct. at 2305 n. 6. Of course, if

there were reason to reach this conclusion, the Court would have been obliged to do so *sua sponte. See, e.g., Boeing Co. v. Van Gemert*, 444 U.S. 472, 488 n. 4, 100 S.Ct. 745, 754 n. 4, 62 L.Ed.2d 676 (1980) (Rehnquist, J., dissenting).

solve the difficult problem of how to define "too far." ... As we have noted, resolution of that question depends, in significant part, upon an analysis of the effect the Commission's application of the zoning ordinance and subdivision regulations had on the value of respondent's property and investment-backed profit expectations.

473 U.S. at 199–200, 105 S.Ct. at 3123.

Because we believe that resolution of the RSA's due process claim requires the individual participation of its members, we hold that the association lacks standing to bring that claim.

### CONCLUSION

The RSA has presented only "as applied" challenges to the Rent Law and Rent Code, and because we hold that resolution of these challenges would require the individual participation of the aggrieved landlords, we affirm the dismissal of the case. The appropriate procedure would have been for individual landlords to sue either as a class or on their own. Although this may appear inefficient and burdensome, it is the only way to present a federal court with the type of live "case or controversy" demanded by the Constitution. Moreover, it is the only realistic way to present the case so that a federal court will be able to resolve it fully and fairly.

We affirm the judgment of the district court.